CARL ENTERPRISES and Navigational & Safety Aids, Inc., Plaintiffs,

v.

BARGE HUDSON HANDLER, etc., in rem, and Hyco-Subsea, Inc., in personam, Defendants.

Civ. A. No. 78–576–H.

United States District Court, S. D. Alabama, S. D.

July 25, 1979.

James W. Tarlton, III, and Joe E. Basenberg, Mobile, Ala., for plaintiffs.

James W. Tarlton, III, and Joe E. Basenberg, Mobile, Ala., for Sabayrac Battery Associates, Inc.

William H. Seele, Houston, Tex., for intervenor Jaynes Shipping Co., Inc.

Robert S. De Lange, Galveston, Tex., for National Cotton, Inc., intervenor.

Rae M. Crowe, William M. Moore, Mobile, Ala., for proposed intervenors Peninsular & Oriental Steam Navigation Co., and P&O Subsea, Ltd., and intervenor Jaynes Shipping Co., Inc.

Sidney H. Schell, Mobile, Ala., for barge.

John O'Gorman, Anderson, Stone & Jason, Ltd., New York City, for Westinghouse Electric Corp.

David A. Bagwell, Mobile, Ala., for Hogan Fluid Power, Inc.

Cary W. Vercher, Morgan City, La., for G & J Land & Marine Food Distributors.

David S. Conrad, Mobile, Ala., for intervenor Shannon Hardware Co.

Champ Lyons, Jr., Mobile, Ala., for intervenors Sub-sea Systems, Inc. and Underwater Survey, Inc.

J. Hodge Alves, III, Mobile, Ala., for intervenor A-Line Towing Company, Inc.

G. Hamp Uzzelle, III, Mobile, Ala., for intervenor Atlas Travel, Inc.

Robert E. Bastien, Galveston, Tex., for Wright's Price-Rite Supermarket, Inc.

Fred D. Jamail, Houston, Tex., for Don H. Boyer.

Peter F. Burns, Mobile, Ala., for Air Power Service Co., Inc.

Michael E. Ballard, Mobile, Ala., for La-Marche Manufacturing Co.

Irving Silver, Mobile, Ala., for intervenor Texas Marine.

HAND, District Judge.

This matter is presently before the Court on the issue of the amount in which each claimant is to be allowed to share in the proceeds from the sale of the vessel. The Court has considered the record and all evidence submitted in support and in opposition to each and every claim, together with the applicable law, and finds as follows:

## FINDINGS OF FACT

1. On February 1, 1979 the Court entered judgment in favor of claimant Carl Enterprises in the sum of $17,840.00, in favor of claimant Navigational & Safety Aids, Inc. in the sum of $3,446.16, and in favor of claimant Jaynes Shipping Co. in the sum of $39,266.12. Each of these judgments enforced maritime lien claims for supplies and services, and the Court hereby finds that each of these sums adequately reflects the value of the supplies provided and the services rendered.

2. Claimant National Cotton, Inc., seeks recovery of $4,904.56 on the basis of a maritime lien. The evidence reveals that Na-

tional Cotton, Inc., is a Texas corporation doing business in Galveston, Texas, and that between March and September of 1978 it arranged for various parts and repairs to be provided to the M/V HUDSON HAND-LER. This claimant alleges a value of $4,940.56. for the services rendered, and claims that such amount remains due and owing from the vessel. On the basis of the verified complaint in intervention and the account attached thereto filed by this claimant, the Court finds that the claimant National Cotton, Inc. has a valid maritime lien on the vessel in the sum of $4,904.56 for services rendered to the vessel.

3. Claimant Peninsular and Oriental Steam Navigation Company filed two claims against the vessel, the first seeking return of the submersible vessel "LEO" and the second seeking maritime lien status for charter rates owed to it by the vessel. The first claim was resolved by an order of the Court dated December 15, 1978, which permitted the claimant to remove the submersible LEO from the vessel, so the only issue presently before the Court is whether P&O is entitled to a maritime lien on the basis of its second claim.

P&O alleges that it entered a charter party with defendant Hyco-Subsea, Inc., by which P&O was entitled to receive $350.00 per standby day, $1,000.00 per operating day, and $1,500.00 per premium, for use of the submersible LEO. On the basis of this charter party the claimant seeks $9,000.00 for the operating days, $57,750.00 for 165 standby days through December 5, 1978, and $3,500.00 for the 10 standby days between December 6 and December 15, 1978. P&O also seeks $11,741.45 for freight costs that were advanced during the shipping of the LEO to Houston, Texas.

The only issues for the Court are whether P&O is entitled to a maritime lien for either

the sums not paid in accordance with the charter party, or for the transportation costs advanced. The Court finds that P&O is not entitled to a maritime lien on either count, at least not a maritime lien within the same class as the lien possessed by other claimants that provided services and supplies.

The charter party between P&O and Hyco-Subsea, Inc., is subject to English law, not American law, since most of the significant contracts surrounding the charter party occurred in England.[1] British law does not recognize a maritime lien as arising from breach of a charter party. *Rainbow Line, Inc. v. M/V TEQUILA,* 341 F.Supp. 459, 463 (S.D.N.Y.1972), *citing* 2 *Carver, Carriage of Goods By Sea* 1386 (12th ed. Colinvaux 1971); *Scrutton on Charter Parties* 434–35 & n. (i) (17th ed. McNair, Mocatta & Mustill 1964). Recognizing this, P&O has alternatively contended that it supplied a "necessary" in the form of the LEO, and is entitled to lien status on this ground. The Court does not have to reach this contention but even if it did, P&O has failed to establish the value of the supplied service with sufficient certainly to be entitled to any relief. The same reasoning applies to P&O's third claim for transportation costs of the submersible—if lien status is not available as a result of the charter party, then it is certainly not available for transportation of the subject of the charter party.

4. Claimant G and J Land Marine Distributing, Inc., seeks recovery of $2,394.42 on the basis of a maritime lien. The evidence reveals that this claimant provided goods and merchandise to the M/V HUDSON HANDLER in that amount, mostly consisting of foods, between June and September of 1978. On the basis of the itemized statement attached to the claim and

1. The Court finds English law controlling because the LEO was shipped to Hyco from Scotland and was to be returned to Scotland on expiration of the charter party, because as best the Court can ascertain from the evidence presented the charter party was accepted by P&O in England, because the vessel LEO was a British vessel, because the M/V HUDSON HANDLER was a Canadian vessel, because the contract does not clearly specify America as the place for performance, and because American contracts, compared to others, are not significant. The "center of gravity" test, *see Rainbow Line, Inc. v. M/V TEQUILA,* dictates that the law of England controls.

the affidavit verifying that statement, the Court finds that the claimant, G and J Land and Maritime Distributors, Inc., has a valid maritime lien on the vessel in the sum of $2,394.42.

5. Claimant Bludworth Bond Shipyard, Inc., seeks recovery of $540.26 on the basis of a maritime lien. The evidence reveals that this claimant, on April 24 & 25, 1978, furnished a 15 ton crane and a crane operator to perform work for the vessel, and engaged in sandblasting and other repairs on the vessel. On the basis of the invoice describing such services and the affidavit verifying the completion of such services, the Court finds that the claimant Bludworth Bond Shipyard, Inc., has a valid maritime lien on the vessel in the sum of $540.26.

6. Claimant Nautilus Engineering seeks recovery of $291.03 on the basis of a maritime lien. The evidence reveals that this claimant provided the vessel with a Carbon Dioxide Scrubber that turned out to be too large. The original invoice for $1,770.00 was scrapped with a credit memo for that amount being issued. The claimant then imposed a 15% restocking fee of $262.50 and $20.00 fee for "Hot Shot" charges. Interest charges of $8.53 brought the bill of $291.03 at the time that the claim was filed. The charges are in no way certified or verified under oath, although the claimant was given the opportunity to do so. The Court accordingly finds that this claimant has failed to establish a valid maritime lien, and is not entitled to share in the proceeds from the sale of the vessel.

7. Claimant Sperry Marine Systems seeks recovery of $991.35 on the basis of a maritime lien. The evidence reveals that this claimant provided various services to the vessel in the summer of 1978, and the invoices for such services, totaling $991.35, remain unpaid. On the basis of the invoices detailing the services provided by this claimant and the value of such services, together with the affidavit verifying that such services were actually performed, the Court finds that the claimant, Sperry Marine Systems, has a valid maritime lien on the vessel in the sum of $991.35.

8. Claimant Video Systems, Inc., seeks recovery of $2,736.82 on the basis of a maritime lien. The evidence reveals that this claimant provided the vessel with various goods on credit in an amount totalling $2,736.82 during the summer of 1978. While there is some question whether all of the goods were provided to the barge—it appears that some of the goods may have been for the submersible LEO—the Court is content that all of the goods provided were requisitioned by the M/V HUDSON HANDLER and inured to her benefit. Accordingly, the Court finds that the claimant Video Systems, Inc., has a valid maritime lien on the vessel in the sum of $2,736.82 for goods provided on credit to the vessel.

9. Claimant GM Diesel Repairs seeks recovery of $310.34 on the basis of a maritime lien. The evidence reveals that this claimant performed maintenance and repair work on the vessel on August 16, 1978, of a value of $310.34. On the basis of the certified bill presented and the affidavit verifying the bill, the Court finds that the claimant GM Diesel Repairs has a valid maritime lien on the vessel in the sum of $310.34 for work performed for the benefit of the vessel.

10. Claimant Hogan Fluid Power, Inc., seeks recovery of $14,835.91 on the basis of a maritime lien. The evidence reveals that this claimant provided various pumps, pump parts and related equipment, together with labor, of a value of $14,835.91 to the vessel in June and July of 1978. On the basis of the verified complaint setting out the supplies and services furnished, together with the affidavit verifying the provision of such supplies and services, the Court finds that the claimant Hogan Fluid Power, Inc., has a valid maritime lien on the vessel in the sum of $14,835.91 for supplies provided and work performed for the benefit of the vessel.

11. Claimant Westinghouse Electric Corporation seeks recovery of $293.51 on the basis of a maritime lien. The evidence reveals that the claimant asserted in motion to intervene that defendant Hyco-

Subsea is indebted to claimant in the sum of $293.51. No other evidence has been presented with respect to this claim, though the claimant was given the opportunity. Under the evidence before the Court, the Court finds that this claimant has no maritime lien on the subject vessel.

12. Claimant LaMarche Manufacturing Company seeks recovery of $2,733.75 on the basis of a maritime lien. The evidence reveals that the claimant, an Illinois corporation, sold to Hyco-Subsea on credit a float charger for the subject vessel worth $2,733.75 between April and June of 1978. On the basis of the verified motion to intervene and the affidavit of George LeMarche verifying the sale of this float charger to Hyco by the claimant, the Court finds that the claimant LaMarche Manufacturing Company has a valid maritime lien on the vessel in the sum of $2,733.75 for supplies provided to the vessel.

13. Claimant Sabayrac Battery Associates, Inc., a Texas corporation, seeks recovery of $2,207.63 on the basis of a maritime lien. The evidence reveals that this claimant provided batteries worth $2,207.63 to the subject vessel on June 26, 1978 and July 13, 1978. On the basis of the invoices reflecting the sale of these batteries and the affidavit verifying the invoices, the Court finds that the claimant Sabayrac Battery Associates, Inc., has a valid maritime lien on the vessel in the sum of $2,207.63 for goods provided to the vessel.

14. Claimant A-Line Towing Company, a Texas corporation, seeks recovery of $7,060.44 on the basis of a maritime lien. The evidence reveals that this claimant provided necessary repair and mechanical services to the vessel between June and August of 1978. On the basis of the invoices reflecting the services rendered, together with the affidavit verifying the invoices, the Court finds that the claimant A-Line Towing Company has a valid maritime lien on the vessel in the sum of $7,060.44 for the services supplied to the vessel.

15. Claimant Air Power Service Company, Inc., a Texas corporation, seeks recovery of $6,672.00 on the basis of a maritime lien. The evidence reveals that this claimant provided the vessel with two replacement breathing air purifiers, one air compressor unit, and one replacement cartridge element, of a total value of $7,672.00. The evidence further reveals that only $1,000.00 has been paid on this bill. On the basis of the invoices reflecting the provision of goods to the vessel by the claimant, together with the affidavit verifying these invoices, the Court finds that the claimant Air Power Service Company, Inc., has a valid maritime lien on the vessel in the sum of $6,672.00 for goods provided to the vessel.

16. Claimant Wright's Price-Rite Supermarket, Inc., a Texas corporation, seeks recovery of $990.16 on the basis of a maritime lien. The evidence reveals that this claimant provided food and other supplies worth $990.16 to the vessel between March and September of 1978. On the basis of the verified complaint and its attachments, together with the affidavit of D. R. Wright verifying the indebtedness, the Court finds that the claimant Wright's Price-Rite Supermarket, Inc., has a valid maritime lien on the vessel in the sum of $990.16 for goods provided for the benefit of the vessel.

17. Claimant Atlas Travel, Inc., a Texas corporation, seeks recovery of $7,149.49 on the basis of a maritime lien. The evidence reveals that this claimant provided airline tickets for the transportation of certain crewmembers of the subject vessel to certain points from the vessel and from certain points back to the vessel, all of a total value of $7,149.49. On the basis of the ticket invoices reflecting the amounts paid out for tickets, together with the affidavit verifying the invoices, the Court finds that the claimant Atlas Travel, Inc., has a valid maritime lien on the vessel in the sum of $7,149.49 for services provided to the vessel.[2]

---

2. Various claimants have objected to this claim, contending that it does not state a priority claim under the admiralty rules since the services provided did not benefit the ship. The Court is of the opinion that transportation of the crewmembers was a necessity to the navigation of the vessel, and that the objections to this claim are thus without merit.

18. Claimant Sub-sea Systems, Inc., seeks recovery of $3,515.64 on the basis of a maritime lien. The evidence reveals that this claimant provided the submersible LEO with electronic and television equipment and performed certain work for the benefit of the LEO during June and July of 1978, all of a value of $3,515.64. At this time the LEO was aboard the M/V HUDSON HANDLER. The invoices reflecting these goods and services reveal that they were ordered by defendant Hyco, and that they inured to the benefit of Hyco. On the basis of the verified complaint in intervention, the invoices reflecting the goods provided and the services rendered and the affidavit of Elmer Phail verifying such invoices, the Court finds that the claimant Sub-sea Systems, Inc., has a valid maritime lien on the vessel in the sum of $3,515.64 for goods provided to and services performed for the vessel.

19. Claimant Underwater Survey, Inc., seeks recovery of $5,456.57 on the basis of a maritime lien. The evidence reveals that this claimant, during the months of May, July, and August of 1978, provided equipment and labor services similar to those provided by claimant Sub-sea Systems, Inc., *supra,* of a value of $5,456.51, apparently mostly connected with maintenance and improvements on the submersible LEO. Again, however, it is clear that the goods and services were ordered by defendant Hyco, and that they inured to the benefit of Hyco. On the basis of the verified complaint, in intervention, the invoices reflecting the goods provided and the services rendered to the vessel, and the affidavit of Elmer Phail verifying these invoices, the Court finds that the claimant Underwater Survey, Inc., has a valid maritime lien on the vessel in the sum of $5,456.57 for goods provided to and services performed for the vessel.

20. Claimants Shannon Hardware Company, Ltd., Don H. Boyer Company, Comet Construction Company, Inc., and Texas Marine & Industrial Supply Company, Inc., each filed motions to intervene in this case on or after February 1, 1979. This Court's Order of December 15, 1978 required that all claimants seeking maritime lien status file their claims on or before January 31, 1979, and these claimants failed to do so, although adequate notice was certainly provided. On this basis, the Court finds that these claimants are not entitled to share in the proceeds of the sale of the vessel with those maritime lienors that made timely claims.

## CONCLUSION OF LAW

1. Recapitulation of the claims on the vessel resulting from valid maritime liens reveals that $123,051.62 is validly claimed against the vessel. Only $32,074.99 remains from the sale of the vessel after certain expenses were paid. Accordingly, the Court is of the opinion that each of the valid maritime lienors is entitled to recover 26.06628% of its claim.

## AMENDMENT OF JUDGMENT

Claimant Shannon Hardware Company, Ltd., has filed a motion for relief from judgment in this action on the ground that the Court, in paragraph 20 of its Findings of Fact entered on July 25, 1979, improperly found that Shannon Hardware Company, Ltd. was late in filing its motion to intervene. Reconsideration and review by the Court indicates that Shannon Hardware Company filed its motion to intervene on January 30, 1979, and thus the intervention was timely and this claimant is entitled to share in the proceeds from the sale of the vessel. Accordingly, the Judgment of this Court previously entered on July 25, 1979 is hereby AMENDED, *nunc pro tunc,* in its entirety, to read as follows:

## JUDGMENT

This matter came on for consideration by the Court, Honorable W. B. Hand, District Judge, presiding, on the question of the amounts due the various maritime lienors from the sale of the vessel made the subject of this action. The Court has considered the record and the claims of each claimant, and, in accordance with the Findings of Fact and Conclusions of Law previously en-

tered in this matter, and in accordance with the reconsideration of the claim of Shannon Hardware Company, Ltd., set out above, it is,

ORDERED, ADJUDGED and DECREED that the proper distribution of funds from the sale of the vessel in this matter is as follows:

| | |
|---|---:|
| Carl Enterprises | $ 4,544.87 |
| Navigational & Safety Aids, Inc. | 877.93 |
| Jaynes Shipping Company | 10,003.33 |
| National Cotton, Inc. | 1,249.47 |
| G & J Land and Marine Distributors | 610.00 |
| Bludworth Bond Shipyard | 137.64 |
| Sperry Marine Systems | 252.55 |
| Video Systems, Inc. | 697.22 |
| GM Diesel Repairs | 79.06 |
| Hogan Fluid Power, Inc. | 3,779.56 |
| LaMarche Manufacturing Company | 696.44 |
| Sabayrac Battery Associates, Inc. | 562.41 |
| A-Line Towing Company | 1,798.70 |
| Air Power Service Company, Inc. | 1,699.74 |
| Wright's Price-Rite Supermarket, Inc. | 252.25 |
| Atlas Travel, Inc. | 1,821.39 |
| Sub-sea Systems, Inc. | 895.64 |
| Underwater Survey, Inc. | 1,390.10 |
| Shannon Hardware Company, Ltd. | 736.61 |

By virtue of this recalculation of recovery for each claimant, those claimants who have already been paid on the earlier Judgment have been overpaid, and must remit the following amounts to the Court on or before September 21, 1979: