GAHR DEVELOPMENT, INC. OF
PANAMA, Plaintiff,

v.

NEDLLOYD LIJNEN, B. V., Owner of
the S/T NEDLLOYD MARSEILLES,
Defendant.

LONDON AND OVERSEAS EXPRESS
FREIGHT, LIMITED, Plaintiff,

v.

NEDLLOYD LIJNEN, B. V., Owner of
the S/T NEDLLOYD MARSEILLES,
Defendant.

LONDON AND OVERSEAS (SUGAR)
COMPANY, Plaintiff,

v.

NEDLLOYD LIJNEN, B. V., Owner of
the S/T NEDLLOYD MARSEILLES,
Defendant.

Civ. A. Nos. 81–3126, 81–3132
and 81–3133.

United States District Court,
E. D. Louisiana.

June 25, 1982.

J. Barbee Winston, Antonio J. Rodriguez, Robert C. Evans, New Orleans, La., for plaintiffs.

Robert M. Contois, Jr., New Orleans, La., for defendants.

CASSIBRY, District Judge:

## MEMORANDUM OPINION

Defendant, Nedlloyd Lijnen, B. V., brought these motions to vacate writs of attachment and to dismiss for forum non conveniens. The motion to vacate the writs is GRANTED, and the motion to dismiss is GRANTED PROVIDED THAT the defendant submits to either the jurisdiction of Nigeria or the United Kingdom[1] and waives any statute of limitations or laches defense concerning the time of re-filing the law suit in the new jurisdiction.

## REASONS

### I. Motion To Vacate Writs of Attachment

On May 3, 1981, the M/V NEDLLOYD MARSEILLES, a vessel owned by the defendant, Nedlloyd Lijnen B. V. ("Nedlloyd"), collided with a vessel owned by the plaintiff, Gahr Development, Inc. ("Gahr"), in the harbor of Lagos, Nigeria. As a result of the collision, several suits were filed (and later consolidated) against Nedlloyd. Alleging that Nedlloyd could not be "found within the district," each suit prayed for issuance of writs of attachment to seize another vessel owned by Nedlloyd, the M/V NEDLLOYD ROUEN. Nedlloyd argues that the plaintiffs were in error in seizing the vessel because Nedlloyd *could* be "found within the district."

Rule B of the Supplemental Admiralty Rules provides in part:

(1) With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, *if the defendant shall not be found within the district.* (emphasis added)

For purposes of a maritime attachment pursuant to Rule B, a defendant is deemed to be "within the district" when:

1. the defendant can be found in the district in a geographical sense, i.e. the defendant has a resident agent for service of process within the geographical confines of the district, and

1. The United Kingdom is offered as an alternative simply because, at oral argument, all parties expressed a more significant interest in trying this case in England than in Nigeria if this court should dismiss the suit.

2. the defendant can be found in the district in a jurisdictional sense, i.e., the defendant has engaged in sufficient activity in the district to constitute "minimum contacts."

*Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.,* 476 F.Supp. 119, 122 (S.D.N.Y.1979); *Chilean Line, Inc. v. United States,* 344 F.2d 757, 760 (2d Cir. 1965); *Oregon v. Tug GO GETTER,* 398 F.2d 873 (9th Cir. 1968).

■ Only the first prong of this two-part test is at issue; the parties do not dispute that the defendant has sufficient minimum contacts with the district. However, Nedlloyd alleges, and Gahr denies, that Nedlloyd had an agent for service of process in the district so that the attachment of its vessel was improper. I agree with Nedlloyd that it did have an agent for service within the district.

On July 8, 1981, Nedlloyd informed Gahr in writing that Strachan Shipping Company of New Orleans ("Strachan") was authorized to accept service of process on behalf of Nedlloyd. Nevertheless, Gahr had Nedlloyd's vessel seized on August 2, 1981.[2]

Rule 4(d)(3) of the Federal Rules of Civil Procedure provides that service upon "any . . . agent authorized by appointment . . . to receive service of process" is valid. In its memorandum in opposition to this motion, Gahr posits several unnecessarily complicated arguments[3] in support of its contention that Strachan was not properly such an agent. I find that when Nedlloyd informed Gahr in writing that Strachan was Nedlloyd's agent for service of process, Gahr was then on notice that Strachan was Nedlloyd's agent within the meaning of Rule 4(d)(3). Indeed, under the circumstances involved in

this case, Nedlloyd would have been estopped from denying that Strachan was its agent for service of process. Some sort of burdensome, formal appointment procedure is not required under Rule 4(d)(3). A more reasonable reading of the language "by appointment" would merely be "specifically designated."

Therefore, because there is no dispute that Nedlloyd has substantial contacts with this district, and because Nedlloyd apprised Gahr before the seizure that Strachan was its authorized agent for service of process, under Rule B the writs of attachment must be vacated.

■ Nevertheless, it is possible to effect an attachment under state attachment procedures if state law is specifically invoked. *Cordoba Shipping Co., Ltd. v. Marco Shipping, Ltd.,* 494 F.Supp. 183 (D.Conn.1980). Rule 64 of the Federal Rules of Civil Procedure expressly authorizes the use of all state remedies "providing for seizure of . . . property for the purpose of securing satisfaction of the judgment ultimately to be entered." However, there is no evidence of any kind in the attachment pleadings involved in this suit that plaintiffs were invoking Louisiana attachment procedure.

■ Even assuming, *arguendo,* that plaintiffs did invoke state law, the attachment would still not have been proper. Under Louisiana law, a writ of attachment may be obtained when the defendant is a non-resident who has no duly appointed agent for service of process within the state. La.Code Civ.Pro. art. 3541(5). However, I find that Strachan *was* such a duly appointed agent. La.Code Civ.Pro. art.

---

**2.** The vessel was subsequently released in exchange for letters of undertaking issued to the plaintiffs in the full amount of their claims.

**3.** For example, Gahr discusses at great length the caselaw definition of a "managing or general agent" for purposes of service of process under Rule 4(d)(3). This discussion, and most of the cases cited therein are not relevant to the situation involved in this suit. It is not necessary to determine the "managing or general agent" status of the person receiving service where, as here, a principal has unequivocally

informed the person desiring to make service that a particular party is its agent for receiving service of process.

I know of no authority, and Gahr cites none, for the proposition that once a principal specifically designates an agent to receive service, the principal can still attack the validity of service on that agent because the agent does not fit within some caselaw definition of a "managing or general agent." Such a rule of law would be ridiculous.

5251(2) defines "agent for service of process" as:

> ... the agent designated by a person ... to receive service of process in actions and proceedings brought against him in the courts of this state.

This article merely requires that a person be "designated" as one's agent for service of process. It is clear that Nedlloyd so "designated" Strachan as its agent and advised plaintiffs of this designation weeks before the plaintiffs attached the Nedlloyd vessel.

Plaintiffs argue that Strachan could not properly be Nedlloyd's agent for service of process because Strachan was not registered with the Louisiana Secretary of State as such an agent. Louisiana Foreign Corporation law, La.Rev.Stat. 12:308, requires foreign corporations authorized to transact business in the state to register at least one agent for service of process with the Secretary of State. With the exception of this statute, no other Louisiana law requires that agents for service of process be so registered. In the context of the controversy involved in this case, I find that La.Rev. Stat. 12:308 is not controlling; rather, La. Code Civ.Pro. art. 5252(2) is the relevant provision, and it defines an agent for service of process merely as a party so "designated." Although a foreign corporation may be in violation of the Louisiana Foreign Corporation law if it does not have a registered agent for service of process,[4] that does not make invalid service on an agent expressly designated by a principal as the agent for service of process, although the agent is not "registered." Therefore, even under Louisiana law the writs of attachment must be vacated.

**4.** It should be noted that La.Rev.Stat. 12:302(H) may well exempt Nedlloyd from even having to register itself or any agent with the Secretary of State since Nedlloyd engages only in interstate and foreign commerce.

**5.** Eight factors are outlined: (1) place of wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured; (4) allegiance of defendant shipowner; (5) place of the contract;

## II. Motion To Dismiss For Forum Non Conveniens

As previously indicated, this case involves a collision in Nigerian territorial waters between the M/V NEDLLOYD MARSEILLES and the M/V RONHILL. The defendant, Nedlloyd, seeks to have this suit dismissed, alleging forum non conveniens, and states that it is prepared to appear and defend this case in Nigeria or in the United Kingdom.

Prior to dismissing a case for forum non conveniens, a district court must first determine whether American or foreign law is applicable. If American law applies, the court should generally retain jurisdiction. *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015 (5th Cir. 1981). If foreign law applies, then the court examines traditional considerations of forum non conveniens to determine whether it should exercise its discretion and decline to assert jurisdiction over the case. *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

After considering the factors[5] listed in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), I have determined that foreign law would apply to this controversy. Among other things, it is significant to note that the collision occurred in Nigerian territorial waters; the defendant's vessel is registered in Holland and is owned by a Dutch company; the plaintiff's vessel is registered in Panama and is owned by a Panamanian corporation; and a foreign forum such as Nigeria is not inaccessible.[6] The facts involved in this suit clearly do not warrant the application of American law.

inaccessibility of foreign forum; (7) law of the forum; and (8) the shipowner's base of operations.

**6.** Although no forum will be perfect for this lawsuit since foreigners of different nationalities are involved, a suit in Nigeria would unquestionably involve less inequities than a suit brought in the United States.

After determining that foreign law would apply to this suit, I have also determined that this case should be dismissed for forum non conveniens. Weighing the factors outlined in *Gilbert, supra*,[7] indicates that the balance is strongly in favor of the defendants, and that an injustice would result if this court retained jurisdiction. *Poseidon Shiffahrt, G.M.B.H. v. The M/V NETUNO*, 474 F.2d 203, 205 (5th Cir. 1973). Furthermore, although there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, the presumption applies with less force and deserves somewhat less deference when, as in this case, the plaintiffs are foreign. *Piper Aircraft Co. v. Reyno*, —— U.S. ——, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981).

There is no United States interest involved in this lawsuit. No party is a United States resident, nor did any event connected with the case take place here. The Nedlloyd vessel which was involved in the collision does not trade in the United States, and Gahr's vessel has not called in the United States during the time that Gahr has owned her. The Gahr vessel was time-chartered to a British corporation, and the owner of the cargo on the Gahr vessel is also a British corporation. At the time of the collision, the Nedlloyd vessel was being navigated by Mr. L. C. Echemazu, a mandatory pilot supplied to the vessel by the Nigerian Port Authority. Mr. Echemazu is a Nigerian national resident in the Lagos-Apapa port area. He is obviously a potential witness to testify as to how and why the accident occurred. At the time of the collision the Nedlloyd vessel was being assisted by two tugs that are permanently stationed in Lagos, Nigeria. The tugs each have two Dutch officers who apparently reside in Nigeria, and three Nigerian crew members. Testimony of the officers and crew of the assisting tugs would be expected on the issue of liability since they most likely witnessed all or part of the events surrounding the accident.

Following the collision, the damaged cargo was inspected on behalf of Nedlloyd by a surveyor, Mr. W. I. Akpa. Mr. Akpa is a Nigerian national resident in the Lagos-Apapa area. His testimony on the issue of damages would be expected.

Nedlloyd logically asserts that since the collision took place in the confined waters of the Nigerian port, a view of the scene might be helpful, as would testimony from local witnesses as to channel depth and width and underwater currents. Nedlloyd also points out that although there are grounds for impleading the two tugs, as well as the harbor pilot and the Nigerian Port Authority, these parties are not susceptible to compulsory process in the United States.

In addition to these considerations of the "private interests" which favor dismissal of this suit, some deference must also be given to the "public interests" involved. Nigeria unquestionably has more interest in this litigation than does the United States.[8] The accident occurred in Nigeria, and several of the people involved reside in Nigeria. There is some local interest in having controversies decided in the locality where the controversy arose. *Gilbert, supra*, at 509. But in short, the American interest in this accident is simply non-existent. The plaintiffs fail to demonstrate any factor that would justify the considerable commitment

7. The Court listed such factors as: (1) private interests of the litigants; (2) relative ease of access to sources of proof; (3) availability of compulsory process; (4) cost of obtaining attendance of willing witnesses; and (5) the possibility of view of the premises.

8. Indeed, there are even several other countries besides Nigeria that have more interest in this suit than does the United States.

The Nedlloyd vessel is registered in Holland and is owned by a Dutch company, and the Gahr vessel is registered in Panama and is owned by a Panamanian corporation believed to be controlled by Greek nationals who reside in Greece. At the time of the collision, the Gahr vessel was discharging cargo that had been loaded in Antwerp, Belgium and Rouen, France. The Gahr vessel was time-chartered to a British corporation with its principal place of business in London.

The Nedlloyd vessel was manned by Dutch officers and primarily Philippine nationals. The master and officers of the Gahr vessel were apparently all Korean nationals.

of judicial time and resources that would inevitably be required if this case were tried in the United States.