HEIDMAR, INC. and Heidenreich Marine, Inc. as Agents for Heidmar, Inc., Plaintiffs,

v.

ANOMINA RAVENNATE DI ARMAMENTO SP.A. OF RAVENNA and A.R.A. Anomina Ravennate Di Armamento Sp.A., in personam, and M/V Pegasus Erre, Her Hull, Engines, Machinery, Tackle, Apparel, Furniture, etc., in rem, Defendants.

C.A. No. C–97–151.

United States District Court, S.D. Texas, Corpus Christi Division.

June 20, 1997.

Frank Lowell McNiff, Jr. and John Michael Quinlan, the Kleberg Law Firm, Corpus Christi, TX, for Plaintiffs.

Peter A. McLauchlan, Meyer, Orlando and Evans, Houston, TX, for Defendant.

*ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND ORDER SUSTAINING DEFENDANTS' OBJECTIONS TO MAGISTRATE ORDER DENYING DEFENDANTS' FIRST AMENDED MOTION TO VACATE ARREST AND DEFENDANTS' MOTION TO RECONSIDER*

JACK, District Judge.

On this date came on to be considered Defendants Anomina Ravennate Di Armamento Sp.A. of Ravenna and A.R.A. Anomina Ravennate Di Armamento Sp.A. *in personam* ("Ravennate") and M/V PEGASUS ERRE, her hull, engines, machinery, tackle, apparel, furniture, etc., *in rem*'s ("PEGASUS ERRE") Motion for Partial Summary Judgment against Plaintiffs Heidmar, Inc. and Heidenreich Marine, Inc. ("Plaintiffs"); Defendants' Objections to Magistrate Order Denying Defendants' First Amended Motion to Vacate Arrest and Defendants' Motion to Reconsider; and Plaintiffs' Motion for Leave to File Third Amended Complaint.

## I. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1333.

## II. FACTS & PROCEEDINGS

Plaintiffs are in the business of ocean transportation; approximately half of Plaintiffs' business is derived from the carriage of oil products for petroleum companies. (Heidenreich Aff. Ex. ¶¶ 2, 5.) Plaintiffs do not own any vessels, and therefore, charter ships under a variety of arrangements. (*Id.* ¶ 2.)

In May 1995, Plaintiffs negotiated a time charter party ("Charter Party") dated June 12, 1995, with Ravennate for the PEGASUS ERRE, a vessel owned by Defendants. (Second Aff. Heidenreich at 2.; Charter Party at 1.) The Charter Party contained a choice of law provision stating that it "shall be construed and the relations between the parties determined in accordance with the laws of

England." (*Id.* at Cl. 41(a).) This agreement further provided that at the date of delivery of the PEGASUS ERRE, this vessel shall be fit to carry crude petroleum and/or its products; classed; tight, staunch, in good order and condition, and in every way fit for service; fitted for burning at sea fueloil with a maximum viscosity; oil tight; and in compliance with certain other requirements. (Charter Party at Cl. 1.) The Charter Party also required Ravennate to obtain this vessel's inspection and approval from various oil companies until the charter's conclusion. (Time Charter Terms at Cl. 36; Second Aff. Heidenreich at 2.)

Delivery of the PEGASUS ERRE occurred in November 1995. (*Id.* at 2.) However, in October 1996, Plaintiffs returned the vessel to Ravennate, complaining that Ravennate did not meet the requirements imposed by the Charter Party. (*Id.* at 3–4.) Specifically, Plaintiffs claim that the PEGASUS ERRE was involved in a pollution incident in December 1995. (*Id.*) In addition, in January 1996, the vessel allegedly experienced inconsistency with maintaining cargo temperatures, difficulty reporting fuel figures, and inoperative fuel heating coils. (*Id.*) Further, Plaintiffs complain that the vessel failed inspections and lost approvals with various oil companies, including Amoco in March 1996, May 1996, and September 1996.

On March 7, 1997, Plaintiffs commenced suit against Defendants, asserting a claim for a maritime lien against the PEGASUS ERRE arising from Ravennate's alleged breach of the time charter with Plaintiffs for this vessel, and seeking the arrest of the PEGASUS ERRE pursuant to Supp.R.Fed. R.Civ.P. C. Defendants answered, counterclaimed for breach of contract and wrongful arrest, and moved to dismiss Plaintiffs' complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

On March 7, 1997, the magistrate entered an Order for the arrest and seizure of the PEGASUS ERRE. The PEGASUS ERRE was arrested on March 10, 1997.

On March 14, 1997, the magistrate entered an Order setting the security to obtain release of the PEGASUS ERRE at $839,078 plus interest at ——per annum. This Order provided that such security shall be posted by bond, unless Plaintiffs agree to an alternative form of security. On March 19, 1997, Defendants furnished a bond to secure the release of the PEGASUS ERRE.

On March 12, 1997, the PEGASUS ERRE moved to vacate the arrest, contending that Plaintiffs' arrest of the PEGASUS ERRE was improper and wrongful on the ground that English law governs the charter party at issue and English law does not provide a maritime lien for breach of a charter party. At a hearing on March 12, 1997, the magistrate denied the motion to vacate without prejudice. Defendants thereafter filed a first amended motion to vacate on March 14, 1997, and a motion for reconsideration on March 25, 1997.

In an Order entered March 31, 1997, the magistrate denied the motion for reconsideration and denied the first amended motion to vacate the arrest. Defendants filed Objections this Order on April 4, 1997.

The Court converted Defendants' Motion to Dismiss into a Motion for Summary Judgment on April 9, 1997. Defendants filed a Supplement to Motion for Summary Judgment on May 1, 1997. Plaintiffs responded to the Motion on May 13, 1997.

On May 15, 1997, the parties appeared for the Initial Pretrial Conference. During this hearing, the Court ruled that Plaintiffs could not proceed against the PEGASUS ERRE, her hull, engines, machinery, tackle, apparel, furniture, etc., in rem, under Supp.R.Fed. R.Civ.P. C, and converted Plaintiffs' arrest of this vessel into a temporary attachment pursuant to Supp.R.Fed.R.Civ.P. B, pending further summary judgment briefing on the following issues: (1) whether Ravennate has sufficient minimum contacts for the purposes of Supplemental Rule B, (2) whether Ravennate can be found within the geographical confines of this district for service of process for the purposes of Supplemental Rule B, and (3) whether Ravennate waived its right to contest arrest under Supplemental Rule C. Regarding the service of process issue, the Court indicated that the parties should address whether Ravennate must be found within the district when the action was filed

or prior to attachment. Plaintiffs and Defendants filed said briefing with the Court on May 27, 1997, and submitted reply briefing with the Court on June 3, 1997.

Plaintiffs filed a Motion for Leave to File Third Amended Complaint on June 3, 1997. Plaintiffs seek leave to amend to include a request to proceed by attachment under Supplemental Rule B and to assert a claim that Defendants waived their objections to the vessel's arrest. The Court finds that Plaintiffs' Motion for Leave to File Third Amended Complaint should be granted.

## III. DISCUSSION

### A. STANDARDS OF REVIEW

The Court may consider Defendants' objections to the magistrate's order pursuant to Fed.R.Civ.P. 72(a). A district judge will modify or set aside a magistrate judge's order if the district judge finds the order "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); *Alldread v. City of Grenada,* 988 F.2d 1425, 1434 (5th Cir.1993).

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir. 1996).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–1047 (5th Cir. 1996). If the nonmovant bears the burden of proof, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554; *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 747 (5th Cir. 1989). Once the moving party has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In considering a motion for summary judgment, the court cannot make credibility determinations, weigh the evidence, or draw inferences for the movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. However, the court must draw all justifiable inferences from the summary judgment evidence in the light most favorable to the nonmovant. *Id.* at 255, 106 S.Ct. at 2513; *Pasant v. Jackson Nat'l Life Ins. Co.,* 52 F.3d 94, 96 (5th Cir. 1995).

### B. SUPPLEMENTAL RULE C

As discussed previously, on May 15, 1997, during the Initial Pretrial Conference, the Court ruled that Plaintiffs could not proceed against the PEGASUS ERRE, her hull, engines, machinery, tackle, apparel, furniture, etc., in rem, under Supp.R.Fed.R.Civ.P. C. The Court discusses below the reasons Plaintiffs could not arrest the PEGASUS ERRE under Supplemental Rule C.

Supplemental Rule C authorizes in rem actions (1) to enforce any maritime lien, or (2) whenever a statute of the United States provides for a maritime action in rem. Supp.R.Fed.R.Civ.P. C(1). Pursuant to Supplemental Rule C(1)(a), a maritime lien on a vessel is a prerequisite to an action in rem. *Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla,* 776 F.Supp. 1558, 1560 (S.D.Fla.1991) (citing *Belcher Co. of Ala., Inc. v. M/V Maratha Mariner,* 724 F.2d 1161, 1163 (5th Cir.1984)), *aff'd,* 966 F.2d 613 (11th Cir.1992). Supplemental Rule C(1)(a) is procedural and does not create maritime liens; maritime liens are an aspect of substantive law rather than procedural maritime law. *Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla,* 966 F.2d 613, 615 (11th Cir.1992).

■ In the instant case, the Charter Party negotiated by the parties provides: "This charter shall be construed and relations between the parties determined in accordance with the laws of England." (Time Charter Party at Cl. 41(a).) Such choice of law clauses are presumptively valid and apply to the creation of maritime liens. *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 986 (5th Cir.1992). Therefore, English substantive maritime law governs the issue whether Plaintiffs have a maritime lien as required to proceed under Supplemental Rule C(1)(a).

■ When analyzing foreign law, the district court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. Fed. R.Civ.P. 44.1; *Trinidad Foundry & Fabricating*, 966 F.2d at 615. Defendants submit case law indicating that English law does not recognize a maritime lien arising from an alleged breach of a charter party. *See Berliner Bank AG v. Czarnikow Sugar Ltd.*, 2 Lloyd's Rep. 281 (Queen's Bench Div., Admiralty Court 1996). *See also Carl Enterprises v. Barge Hudson Handler*, 475 F.Supp. 42, 44 (S.D.Ala.1979) ("The charter party between P & O and Hyco Subsea, Inc. is subject to English law, not American law. . . . British law does not recognize a maritime lien arising from breach of charter party."); *Rainbow Line, Inc. v. M/V Tequila*, 341 F.Supp. 459, 463 (S.D.N.Y.1972) ("Under British law, breach of a charter party does not give rise to a maritime lien."), *aff'd*, 480 F.2d 1024 (2d Cir.1973).

Defendants also provide declarations by David A. Myers ("Myers"), a solicitor in England. (Decl. Myers ¶ 2.) Myers testifies that Clause 26 of the Charter Party, which provides that Plaintiffs "shall have a lien on the vessel . . . for all damages arising from any breach by [Defendants] of this Charter," does not create a maritime lien. (Fourth Decl. Myers ¶ 5.) Myers declares that any lien created by Clause 26 is contractual only and contractual liens do not give rise a maritime lien under English law. (*Id.* ¶ 4; *see* Second Decl. Myers ¶¶ 2,3,4.) Defendants offer secondary source material stating that

liens created by similar clauses in time charters are "contractual only" and do not create a maritime lien under the law of England. (*See* Michael Wilford, Terence Coghlin & John D. Kimball, *Time Charters* at 479–489 (1995)).

Plaintiffs counter by arguing that breach of a charter party under American law gives rise to maritime lien. *See International Marine Towing, Inc. v. Southern Leasing Partners, Ltd.*, 722 F.2d 126, 130 (5th Cir.1983); *Rainbow Line, Inc. v. M/V Tequila*, 480 F.2d 1024, 1027 (2d Cir.1973) ("The American law is clear that there is a maritime lien for the breach of a charter party"). As discussed earlier, however, the Charter Party's choice of law clause provides that relations between the parties are determined in accordance with the laws of England. Consequently, American law is not controlling or relevant here.

To support their argument that they possess a maritime lien under English law for breach of a charter party, Plaintiffs submit a declaration by Richard William Rayfield ("Rayfield"), a solicitor of the Supreme Court of England and Wales. (Ex. D, Rayfield Decl. ¶ 2.) Rayfield nevertheless does not state that a maritime lien attaches to Plaintiffs' claim for breach of charter party under English law. Rather, Rayfield declares that Plaintiffs have a statutory right in rem or a statutory lien under English law pursuant to section 20(2)(h) of the Supreme Court Act of 1981, which allows a vessel to be arrested for "any claim arising out of any agreement relating to the carriage of goods in a ship or to the use of a ship." (Ex. B, Rayfield Decl. ¶ 13.) Thus, Rayfield's testimony indicates that Plaintiffs have a statutory lien or right of action in rem for breach of charter party pursuant to English law.

■ The Fifth Circuit has held that "under Supplemental Rule C(1)(a), a maritime lien is required, and a statutory right of action in rem [under English law] will not suffice." *See Sembawang Shipyard, Ltd.*, 955 F.2d at 988 (applying the law of Singapore law which is the same as English law). A statutory action in rem under English law does not create a maritime lien for the purposes of Supplemental Rule C(1)(a). *See*

*Trinidad Foundry & Fabricating,* 966 F.2d at 616–617.

Therefore, even assuming that Plaintiffs have a right to proceed in rem against the PEGASUS ERRE under § 20(2)(h) of the Supreme Court Act of 1981 for breach of a charter party, they do not have a maritime lien against the vessel for the purposes of Supplemental Rule C(1)(a). *See Castelan v. M/V Mercantil Parati,* 1991 WL 83129, at * 3–4 (D.N.J.1991) (holding that plaintiffs had no right to proceed in rem against vessel under Supplemental Rule C(1)(a) when they only possessed a statutory lien, i.e., statutory right of action, under § 20(2)(h)). Consequently, the Court finds, as a matter of law, that Plaintiffs do not have a maritime lien under English law which allows them to proceed in rem under Supplemental Rule C(1)(a).

■ In addition, a vessel may be arrested under Supplemental Rule C(1)(b), "[w]henever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto." Supp.R.Fed.R.Civ.P. C(1)(b). Plaintiffs argue that the Federal Arbitration Act, 9 U.S.C. § 8, allows them to proceed under Supplemental Rule C(1)(b). The Act provides as follows:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

9 U.S.C. § 8.

Section 8 of the Federal Arbitration Act "does not itself confer jurisdiction or a right against a vessel in rem." *Sembawang Shipyard, Ltd.,* 955 F.2d at 987; *E.A.S.T., Inc. v. M/V ALAIA,* 673 F.Supp. 796, 800 (E.D.La. 1987), *aff'd,* 876 F.2d 1168 (5th Cir.1989). The Fifth Circuit specifically has held that a party cannot arrest a vessel under Supplemental Rule C(1)(b) pursuant to 9 U.S.C. § 8. *Sembawang Shipyard, Ltd.,* 955 F.2d at 987–988 & n. 5. Therefore, in light of the foregoing authority, the Court finds that, as a matter of law, that Plaintiffs could not proceed against the PEGASUS ERRE under Supplemental Rule C(1)(b) pursuant to section 8 of the Federal Arbitration Act.

## C. SUPPLEMENTAL RULE B

In ruling that Plaintiffs could not proceed against the PEGASUS ERRE in rem under Supplemental Rule C at the Initial Pretrial Conference, the Court converted Plaintiffs' arrest of this vessel into a temporary attachment pursuant to Supp.R.Fed.R.Civ.P. B. *See Sembawang Shipyard, Ltd.,* 955 F.2d at 989 (allowing attachment under Supplemental Rule B where party could not proceed under Supplemental Rule C). The Court allowed Plaintiffs to proceed under Supplemental Rule B pending further summary judgment briefing on the following issues: (1) whether Ravennate has sufficient minimum contacts for the purposes of Supplemental Rule B and (2) whether Ravennate can be found within the geographical confines of this district for service of process for the purposes of Supplemental Rule B.

■ Supplemental Rule B provides, in relevant part: "With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels . . . if the defendant cannot be found within the district." Supp.R.Fed.R.Civ.P. B(1). A defendant is deemed to be "found" within the district if (1) the defendant can be found within the geographical confines of the district for purposes of service of process, and (2) the defendant has sufficient minimum contacts to support personal jurisdiction. *LaBanca v. Ostermunchner,* 664 F.2d 65, 67 (5th Cir.1981); *Seawind Compania, S.A. v. Crescent Line, Inc.,* 320 F.2d 580, 582 (2d Cir.1963). If the answer to both of these prongs "is affirmative, then the defendant can be found 'within the district' for the purpose of Rule B(1) and the process of attachment . . . is not available to the plaintiff." *LaBanca,* 664 F.2d at 67.

■ As a threshold matter, the parties dispute what the proper time period is for

determining whether a defendant is "found within the district" under Supplemental Rule B. Plaintiffs maintain that the critical time period is when the complaint is filed. Defendants contend that the proper time period is the time of attachment.

In support of their position, Plaintiffs cite *LaBanca, supra*, pointing to the following language in this opinion: "The issue before us now is whether [appellee] could be found within the Middle District of Florida at the time appellant filed this action." 664 F.2d at 67. However, the Court finds this argument not on point, since *LaBanca* does not specifically hold that the proper time period for determining whether a defendant could have been found within the district is when the action is filed. Additionally, the Court rejects Plaintiffs' position, since courts directly reaching this issue have stated that "the relevant time period is at the time of the attachment." *Western Bulk Carriers v. P.S. International, Ltd.*, 762 F.Supp. 1302, 1308 (S.D.Ohio 1991); *see also Gahr Development Inc. of Panama v. Nedlloyd Lijnen, B.V.*, 542 F.Supp. 1224, 1226 (E.D.La.1982) (vacating writ of attachment where defendant was found within district "before seizure"), *aff'd*, 723 F.2d 1190 (5th Cir.1984).

In light of *Western Bulk Carriers* and *Gahr Development Inc. of Panama*, the Court holds that the proper time for determining whether the defendant could have been found within the district is at the time prior to attachment rather than at the time of filing the complaint. The Court's holding is consistent with the purposes of maritime attachment, *Swift & Co. v. Compania Colombiana*, 339 U.S. 684, 693, 70 S.Ct. 861, 867, 94 L.Ed. 1206 (1950) (the purposes of maritime attachment is to secure a defendant's appearance), particularly where, as in this case, Plaintiffs were notified that Ravennate could be found within this district for purposes of service of process three days prior to attachment.

■ Turning to the first element of the two-prong test, the Court must determine whether the defendant could have been found within the district for service of process. *LaBanca*, 664 F.2d at 67. In *Gahr Development Inc. of Panama*, a court held that a

defendant could be found within the district for purposes of service of process when the defendant informed the plaintiff in writing that a person was its agent for service of process before the seizure of the defendant's vessel. 542 F.Supp. at 1226. Here, the PEGASUS ERRE was arrested on March 10, 1997. Prior to the vessel's arrest, on March 7, 1997, at 5:00 p.m. Eastern Standard Time (4:00 p.m. Central Standard Time), Thomas L. Tisdale, Defendants' Connecticut and New York counsel, sent a letter by fax to Plaintiffs stating that Peter McLauchlan of the law firm Meyer Orlando & Evans in Houston, Texas, was Ravennate's appointed agent for service of process. (Tisdale Aff. ¶¶ 4, 5; *Id.* Ex. A.) Therefore, in light of *Gahr Development Inc. of Panama*, the Court finds, as a matter of law, that Defendants could be found within the Southern District of Texas for purposes of service of process prior to the attachment of the PEGASUS ERRE.

Concerning the second prong, a defendant is deemed "found" within the district when the defendant has sufficient minimum contacts to support personal jurisdiction. *LaBanca*, 664 F.2d at 67; *Seawind Compania, S.A.*, 320 F.2d at 582–583. "Minimum contacts" may arise incident to a federal court's "general" or "specific" jurisdiction over the nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). General jurisdiction is invoked where the nonresident defendant maintains continuous and systematic contacts with the forum state. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990). "When a cause of action arises out of a defendant's purposeful contacts with the forum, minimum contacts are found to exist and the court may exercise its 'specific' jurisdiction. Even a single, substantial act directed toward the forum can support specific jurisdiction." *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir.1990). The Court will address in turn whether or not Ravennate had sufficient minimum contacts to support the exercise of personal jurisdiction under either general or specific jurisdiction.

Ravennate maintains that it had sufficient contacts with the Southern District of Texas

to support general jurisdiction. The primary contacts cited by Ravennate are approximately twelve calls at ports by the PEGASUS ERRE in Houston, Corpus Christi, and Texas City for the period 1994 through 1996. (Sarti Second Decl. ¶¶ 6, 7, 8.) Of these, one occurred in 1994, three between June and November 1995, and eight between November 1995 and October 1996. (*Id.* ¶¶ 6, 7, 8.) Additionally, Defendants point out that Ravennate spot chartered the PEGASUS ERRE to three companies located in Houston from the period October 1996 through February 1997. Nonetheless, the Court is not persuaded that such contacts are sufficient to constitute "continuous and systematic" contacts to give rise to personal general jurisdiction over Ravennate, but more aptly classified as insufficient "sporadic" contacts. *See, e.g., Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 787 (5th Cir.1990) (finding twenty port calls at Louisiana ports, two in 1985, nine in 1986, two in 1987, four in 1988, and three in 1989, are merely "sporadic" contacts and insufficient to support personal general jurisdiction).

Defendants contend that Ravennate had sufficient contacts with the Southern District of Texas to support personal specific jurisdiction. Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities, *Helicopteros Nacionales de Colombia,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8, such that defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). As is evident from Plaintiffs' complaint, this action concerns Ravennate's alleged breach of the time charter concerning the PEGASUS ERRE. Specifically, Plaintiffs claim that the Charter Party required Ravennate to obtain the vessel's inspection and approval from oil companies and that the vessel failed inspections and lost approval with various oil companies including Texaco, Exxon, and Amoco.

Here, the time charter agreement between Plaintiffs and Defendants required Ravennate to arrange inspections and approvals from various oil companies after delivery of the vessel to Plaintiffs. (Time Charter Terms at Cl. 36.) It also provided that "[i]n case of failure of maintenance of one or more of these major oil companies approvals [Ravennate] shall rectify such failures as soon as practical and possible." (*Id.*) Ravennate offers evidence that it setup inspections and approvals with oil companies and that Ravennate specifically dealt with Amoco's office in Texas City to arrange an inspection of the PEGASUS ERRE in Corpus Christi. (Sarti Second Decl. ¶ 9.) Defendants offer a correspondence from Amoco indicating that the PEGASUS ERRE was inspected by Amoco at the port in Corpus Christi on March 19, 1996 and that there were deficiencies listed on the vessel's inspection report. (*Id.* Ex. C.) Amoco requested Ravennate to advise the oil company regarding a reinspection of the vessel in order to confirm the PEGASUS ERRE's general condition. (*Id.* Ex. C.)

In response, Plaintiffs do not dispute that this contact in the Southern District of Texas (i.e., the inspection of vessel by Amoco in Corpus Christi) is related to their cause of action for breach of the charter party. (Pls.' Second Supp. Resp. to Defs.' Mot. Summ. J. at 9.) Instead, Plaintiffs counter by asserting that Plaintiffs ordered the inspection of the vessel by Amoco. However, the correspondence documents used to support this contention only indicate that Plaintiffs "offered" the PEGASUS ERRE to Amoco subject to inspection at Corpus Christi and that Plaintiffs requested Amoco to bill Ravennate directly for the inspection expenses. (Pls.' Second Supp. Resp. to Defs.' Mot. Summ. J. Ex. J.)

In sum, the Court finds that Plaintiffs' cause of action arises from Ravennate's forum related activities and further finds that Ravennate could reasonably foresee being haled into court in this forum. Therefore, viewing the evidence in a light most favorable to the nonmovant, the Court concludes as a matter of law that Ravennate could be found in this district for purposes of personal specific jurisdiction. Accordingly, the Court GRANTS summary judgment in favor of Defendants on the issue whether Plaintiffs could have proceeded by attachment under Supplemental Rule B.

### D. WAIVER

 Plaintiffs assert that Ravennate waived any objections to the arrest of the PEGASUS ERRE by filing a claim of owner on March 12, 1997, during the security bond hearing held before the magistrate. In support thereof, Plaintiffs rely on *Cactus Pipe & Supply Co., Inc. v. M/V Montmartre,* 756 F.2d 1103, 1110–1111 (5th Cir.1985). In *Cactus Pipe,* the Fifth Circuit held that a vessel owner who files an unrestricted claim of owner when there has been no arrest of its vessel waives subsequent objections to in rem jurisdiction. *Cactus Pipe,* 756 F.2d at 1110.

The Court finds Plaintiffs' argument unpersuasive. First, when Ravennate filed an unrestricted claim of owner during the post-arrest hearing, Defendants contemporaneously asserted oral objections to the propriety of the arrest of the PEGASUS ERRE. (Security Bond Hr'g at 7–9.) Second, on that same day, the PEGASUS ERRE moved to vacate the arrest, contending that the arrest of the vessel was wrongful. *See Cactus Pipe,* 756 F.2d at 1110 ("By the filing of [the claim of owner] without any jurisdictional objection—*and without any prior objection in the pleadings*—the [vessel] has appeared.") (emphasis supplied). Third, the magistrate addressed and denied without prejudice the motion to vacate the arrest of the PEGASUS ERRE argued by Defendants at the security bond hearing on March 12, 1997. Consequently, the Court rejects Plaintiffs' assertion that Ravennate waived any objections to the arrest of the PEGASUS ERRE, and therefore, GRANTS summary judgment in favor of Defendants on Plaintiffs' waiver claim.

### E. OBJECTIONS TO MAGISTRATE'S ORDER

For the reasons stated above, the Court finds that the magistrate's Order Denying Defendants' First Amended Motion to Vacate Arrest and Motion to Reconsider is "clearly erroneous and contrary to law" pursuant to Fed.R.Civ.P. 72(a) and must be SET ASIDE. Accordingly, the Court finds, as a matter of law, that the in rem action against PEGASUS ERRE must be DISMISSED, the arrest of this vessel VACATED, and the bond RELEASED.

### IV. CONCLUSION

In accordance with the above discussion, the Court hereby GRANTS Plaintiffs' Motion for Leave to File Third Amended Complaint, GRANTS Defendants' Motion for Partial Summary Judgment, and SUSTAINS Defendants' Objections to the Magistrate's Order Denying Defendants' First Amended Motion to Vacate Arrest and Defendants' Motion to Reconsider. Accordingly, the Court ORDERS that Plaintiffs' in rem action against the PEGASUS ERRE is DISMISSED, the arrest of the PEGASUS ERRE is VACATED, and the bond RELEASED. It is further ORDERED that the magistrate's Order Denying Defendants' First Amended Motion to Vacate Arrest and Motion to Reconsider is SET ASIDE as clearly erroneous and contrary to law.