Natalie Ortiz TORRES, Petitioner,

v.

Honorable Lawrence E. WALSH, United States District Judge, Respondent.

Application of THE PENNSYLVANIA RAILROAD COMPANY, Petitioner, for a writ of mandamus, or a writ of prohibition, or both,

v.

Hon. Archie O. DAWSON, District Judge of the United States District Court for the Southern District of New York and said United States District Court, Respondents.

Docket Nos. 23472, 23488.

United States Court of Appeals Second Circuit.

Feb. 14, 1955.

Decided April 13, 1955.

Golenbock & Komoroff, New York City (Donald S. Sherwood, New York City, of counsel), for petitioner Natalie Ortiz Torres.

Kirlin, Campbell & Keating, New York City (Roland C. Radice and James B. Magnor, New York City, of counsel), for respondent Honorable Lawrence E. Walsh.

Bleakley, Platt, Gilchrist & Walker, New York City (Robert L. Conkling, New York City, of counsel), for petitioner The Pennsylvania Railroad Company.

Bigham, Englar, Jones & Houston, New York City (James M. Hughes, Jr.,

New York City, of counsel), for respondent Hon. Archie O. Dawson.

Before FRANK and MEDINA, Circuit Judges, and BRENNAN, District Judge.

MEDINA, Circuit Judge.

These two companion cases, argued on February 14, 1955, serve as illustrations of the law in this Circuit applicable to mandamus and prohibition applications in transfer cases under Section 1404(a), 28 U.S.C.

In the Pennsylvania Railroad Company case, plaintiff's goods, shipped from Waynesboro, Pennsylvania, to Cleveland, Ohio, were damaged in transit; and plaintiff sued the railroad in the United States District Court for the Southern District of New York, which had jurisdiction of the person of defendant and of the subject matter of the action. The transaction occurred in Pennsylvania; most of the witnesses were in Pennsylvania. These facts were known to the plaintiff from the beginning; but it chose to sue in the Southern District of New York. Later it was discovered that the damage to the freight might have been caused by the fault of the shipper, Landis Tool Company, at Waynesboro. Accordingly, as the action could have been brought in the United States District Court for the Middle District of Pennsylvania, plaintiff moved under Section 1404(a) to transfer the case to Pennsylvania, in order to join Landis Tool Company as a co-defendant with the railroad, to amend the complaint and to pray for judgment in the alternative against one defendant or the other or both, as the evidence might disclose the negligence of either or both. Obviously, this would serve the convenience of parties and witnesses; but this had been clear all along, and plaintiff, who was the moving party, had chosen to sue in New York. It seems that a discontinuance and the bringing of a new action in Pennsylvania was no solution to plaintiff's problem, as the one-year period of limitations provided in the Bill of Lading had expired. Thus in deciding whether the transfer was "for the convenience of parties and witnesses, in the interest of justice," Judge Dawson had to give consideration in the aggregate to such matters as: the making of the motion for transfer by plaintiff rather than by defendant, as is almost always the case; issues of veracity raised by the supporting and opposing affidavits; and the desire of plaintiff to amend and join a new party defendant after the transfer. In arriving at a conclusion he is said to have exercised his discretion and, if the order were appealable, this court would have power to reverse for abuse of discretion, as in the case of other appealable interlocutory orders.

In the Torres case libellant was a "longshoreman-seaman" aboard the SS Rosario; he was injured in Puerto Rico where the vessel was at the time of the accident and all or practically all the witnesses are in Puerto Rico. But, perhaps because District Judges sitting in admiralty here were thought to be more generous than those in Puerto Rico, this proceeding was commenced in the United States District Court for the Southern District of New York, where personal service of citation was made and a monition issued, pursuant to which the vessel was seized and released upon the filing of the usual undertaking. The claimant-respondent, perhaps also thinking the judges in Puerto Rico might award a less ample recovery, and relying on the obvious convenience of "parties and witnesses," moved under Section 1404(a) to transfer the case to Puerto Rico. This raised the question of whether an in rem proceeding in admiralty was within the scope of Section 1404(a), a matter of statutory interpretation, and also the question of whether the District Court in Puerto Rico would have power to proceed in rem. While it did appear that the vessel had frequently been in the territorial waters of Puerto Rico, it was equally clear that no attempt had been made to seize her there, and the only jurisdiction in rem was that of the District Court in New York.

■ The first question is whether the District Judge has exceeded his power under Section 1404(a), by transferring the case to a district where it might not have been commenced originally. Section 1404(a), it will be recalled, authorizes a transfer only "to any other district or division where it might have been brought." While in a sense it is true that an in rem proceeding might have been brought in Puerto Rico, as the vessel had been there from time to time, it may not be doubted that the Congress intended no transfer in any case where the transferee court lacked competence to proceed. As a proceeding in admiralty has been held to be included in the phrase "any civil action[1]", it is probable that we would hold that the transfer of an in rem admiralty case to a court having no jurisdiction or power over the res was unauthorized, although the question is not entirely free from doubt. But we do not reach that question here as the respondent-claimant has agreed voluntarily to appear in the action in the District Court of Puerto Rico, there appears to be no difficulty on the score of venue, and the Judge granting the transfer has provided in his order that the transfer shall be effective only upon the filing of a bond or stipulation by the claimant of the SS Rosario to pay any judgment or decree recovered against the vessel. Accordingly, we conclude that there was no lack of power to make the order, as the District Court of Puerto Rico will be in effect a court where the action might have been brought.

■ The answer is similarly in the negative in the Pennsylvania Railroad Co. case, where it is not disputed that the action might originally have been brought in Pennsylvania.

■ Our only power to entertain and grant mandamus or prohibition applications is "in aid of" our appellate jurisdiction as provided in the All Writs Act, 28 U.S.C. § 1651, and our interference is justified "to compel an inferior court to relinquish a jurisdiction which it could not lawfully exercise or to exercise a jurisdiction which it had unlawfully repudiated[2]", also in what the Supreme Court has characterized as "really extraordinary causes[3]", of such character that action by an appellate court may be deemed absolutely necessary and essential to the effective exercise of its appellate powers at some later stage of the proceeding. We have already held that, where the transfer has been made to a district in which the action could originally have been brought, we are not called upon to act "in aid of" our appellate jurisdiction, except when we found it necessary to do so in a "really extraordinary cause", Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., 2 Cir., 1950, 178 F.2d 866, 869, where it was said by Learned Hand, then Chief Judge of this court: "We do not believe that our power to protect our own jurisdiction extends to protecting it as against the jurisdiction of another federal court of equal jurisdiction * * *." And this is confirmed by the action taken in a transferred case by the Fourth Circuit

---

**1.** Arrowhead Co., Inc., v. The Aimee Lykes, 2 Cir., 1951, 193 F.2d 83; Internatio-Rotterdam, Inc., v. Thomsen, 4 Cir., 1955, 218 F.2d 514; Becker v. Lykes Bros. S. S. Co., Inc., D.C.S.D.N.Y.1953, 119 F. Supp. 408; St. Paul Fire and Marine Ins. Co. v. American Mail Line, D.C.S. D.N.Y.1950, 94 F.Supp. 28; cf. Ex Parte Collett, 1949, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207; United States v. National City Lines, 1949, 337 U.S. 78, 69 S. Ct. 955, 93 L.Ed. 1226.

**2.** Roche v. Evaporated Milk Ass'n, 1943, 319 U.S. 21, 32, 63 S.Ct. 938, 945, 87 L. Ed. 1185.

**3.** See, e.g., Bankers Life and Cas. Co. v. Holland, 1953, 346 U.S. 379, 74 S.Ct. 145, 149, 98 L.Ed. 106; Ex Parte Fahey, 1947, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041; Roche v. Evaporated Milk Association, 1943, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185; Ex parte Roe, 1914, 234 U. S. 70, 34 S.Ct. 722, 58 L.Ed. 1217; Ex parte Harding, 1911, 219 U.S. 363, 31 S. Ct. 324, 55 L.Ed. 252; see also, Alcoa Steamship Co., Inc., v. Ryan and Knox, 2 Cir., 1954, 211 F.2d 576.

in Internatio-Rotterdam, Inc., v. Thomsen, 4 Cir., 1955, 218 F.2d 514, at page 517, where Chief Judge Parker significantly remarked, "The courts of the United States comprise one great system for the administration of justice."

Accordingly, we may not consider the composite questions of whether these district judges abused their discretion in granting these transfer applications, unless we find that either or both of these two causes are "really extraordinary." This is the second question which we must decide. But there is not the slightest basis for holding that either of these cases is "really extraordinary," or "extraordinary" in any sense. They are the ordinary, run-of-the-mill type of litigation which goes through the District Courts from day to day.

Thus we do not reach nor do we decide the questions of alleged abuse of discretion which it would be necessary for us to decide if it were within our power to consider on the merits, as upon an appeal, whether it was error to issue these orders.

Petitions denied.