**CONTINENTAL GRAIN COMPANY,**
Appellant,

v.

**FEDERAL BARGE LINES, INC., and
Barge FBL–585, Appellees.**

No. 17499.

United States Court of Appeals
Fifth Circuit.

June 30, 1959.

Malcolm W. Monroe, New Orleans, La., Deutsch, Kerrigan & Stiles, Eberhard P. Deutsch, New Orleans, La., of counsel, for appellant.

Charles Kohlmeyer, Jr., New Orleans, La., Lemle & Kelleher, New Orleans, La., Burch, Porter, Johnson & Brown, Memphis, Tenn., of counsel, for appellees.

Before HUTCHESON, Chief Judge, and BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

May an *in rem* admiralty proceeding upon application of a willing Claimant be transferred under Section 1404(a), 28 U.S.C.A., to a district in which the original *res* is not located?

██ That is the question presented by this interlocutory appeal, certified by the District Judge and subsequently accepted by us. 28 U.S.C.A. § 1292(b). Preliminary to the main problem we are of the view that the interlocutory appeal statute enacted by adding paragraph (b) to former 28 U.S.C.A. § 1292 applies to an order certified as dispositive in an admiralty cause.[1] The amendment, to be

1. The new portion, found in paragraph (b), was added by 72 Stat. 1770 (September 2, 1958):

"(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which

sure, refers to "a civil action." And since interlocutory appeals were allowed in admiralty from decrees determining rights and liabilities in patent suits finding infringement and certain injunctions, 28 U.S.C.A. § 1292(a)(3)(4)(1), it might be argued that the use of "a civil action" by Congress was a purposeful one to exclude admiralty causes already covered in part. But we see no such limited purpose. We think the term was used in the broad sense to distinguish between criminal litigation, on the one hand, and all others. This accords with the broad nature of orders encompassed by the new interlocutory appeals amendment. Its own words indicate as well that it is to broaden, not restrict, appealability as it refers to "an order not otherwise appealable under this section." Unlike the former situations of decree fixing rights and liabilities in admiralty or for patent infringement, or injunction, the new act recognizes that there may be problems—perhaps of procedure, or substance, or evidence—in a given case, the decision of which, one way or the other, will effectually dispose of the litigation without the necessity of going through a trial leading to the type of orders already covered under the old Act. Congress meant to put all civil litigation, without regard to its historical divisions of law, equity, or admiralty, within reach of the new Act.

On the merits, the case may be briefly stated. On July 2, 1958, Continental Grain Company filed in the Eastern District of Louisiana a libel *in rem* against the Barge FBL-585 then in the Port of New Orleans, for damage to a cargo of soybeans resulting from the sinking of that barge in the Wolf River at Memphis, Tennessee. This was joined with an *in personam* action against Federal Barge Lines. Scarcely a week before, Federal Barge Lines, Inc. through other counsel had filed a civil suit in the Tennessee State Court against Continental Grain Company for damage sustained by Barge FBL-585 as a result of this very same sinking, allegedly caused by negligence of Continental in its loading and care of the barge. That case was removed and was pending for trial in the United States District Court for the Western District of Tennessee at Memphis. The common issue in both cases,[2] broadly stated, was whether Barge FBL-585 sank as a result of unseaworthiness or negligent loading.

On the filing of the libel, FBL-585 was not actually seized. In accordance with the practice in New Orleans and all major seaports of maritime litigation, the usual letter of undertaking was given by

there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C.A. § 1292 (b) (1958 Supp.). For a recent discussion of this Act and its operation see Wright, The Interlocutory Appeals Act of 1958, 23 F.R.D. 199 (1959), to be reprinted in 1 Barron, Holtzoff & Wright, Federal Practice and Procedure § 58.1 (1950).

2. How the left hand knew nought of the right in this multi-state, multi-forum am-

phibious litigation is explained in the briefs. The underwriters on Federal's hull loss and cargo liability, as were those on Continental's cargo loss and its public liability, were different. Each was apparently anxious to manage its own litigation with a seeming indifference to the strong likelihood that under F.R.Civ.P. 13(a), 28 U.S.C.A. concerning compulsory counterclaims, or general principles of estoppel by judgment, res judicata, or the like, trial of one case would inevitably affect, if not control, the other. See Gilmore & Black, Admiralty 507-08 (1957), and generally 1 Barron & Holtzoff, Federal Practice and Procedure § 394 (1950, and Wright Supp.1958). The Memphis case was apparently tried, but we have been kept discreetly in the dark as to its outcome. In view of our holding the Court in Tennessee may now have to deal with these problems but wholly unaffected by intimations one way or the other from us.

Federal, providing that in consideration of the Barge not being seized and released on bond Federal would "file claim to Barge FBL-585, and pleadings" and "that, vessel lost or not lost [would] pay any final decree which may be rendered against said vessel in said proceedings." The District Court, in granting Federal's motion under Section 1404(a) to transfer the admiralty cause to Memphis because of the presence of witnesses, the convenience of parties and the pendency of the litigation there, apparently gave some significance to the fact that there had been no actual seizure of the Barge. The parties are at one that fair application of the letter undertaking and particularly the Non-Waiver of Rights Clause [3] requires that we treat it as though, upon the libel being filed, the vessel had actually been seized, a Claim filed, a stipulation to abide decree [4] with sureties executed and filed by Claimant, and the vessel formally released. Any other course would imperil the desirable avoidance of needless cost, time, and inconvenience to litigants, counsel, ships, Clerks, Marshals, Keepers and court personnel through the ready acceptance of such letter undertakings. In re Atlantic Gulf & West Indies S. S. Lines (The Agwisun), D.C.S.D.N.Y.1927, 20 F.2d 975, 1927 A.M.C. 1084, 1088.

Continental's opposition to the transfer is not that the admiralty nature of the proceeding somehow sets up its own moat to prevent a Section 1404 transfer. Rather its contention rests on the terms of that Section, which permit transfer "to any other district or division where it might have been brought." § 1404(a).

■■ Since a libel *in rem* requires a *res* and the *res*, at the time of this libel and at the time of transfer, was in New Orleans, not Memphis, the terms of the statute were not met. And, it is further argued, the statute must be read literally since some courts have pointed out that, like a *forum non conveniens* situation, in all cases in which Section 1404 comes into play it presupposes at least two forums in which the defendant is amenable to process. See the full review of this in Blaski v. Hoffman, 7 Cir., 1958, 260 F.2d 317, now pending on certiorari, 359 U.S. 904, 79 S.Ct. 583, 3 L.Ed.2d 570. But we have not so read the Act. To its literal terms we have, with others, recognized what seems to be to us the obvious implication that a cause may, on proper showing, be transferred to another district to which the movant consents to an unlimited submission of the cause even though it could not have been filed there initially. Ex parte Blaski,[5] 5 Cir., 1957, 245 F.2d 737.

---

**3.** The undertaking expressly stated that "the rights of the libelant and claimant-respondent in this proceeding shall be, and for all purposes shall be taken to be, precisely the same as they would have been had the vessel, in fact, been taken into custody by the United States Marshal under said *in rem* process, and released by the filing of claim and release bond."

**4.** Our reference to the stipulation releasing the vessel in the S.S. Monrosa, 5 Cir., 1958, 254 F.2d 297, 1958 A.M.C. 1335, certiorari dismissed 1959, 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723, is somewhat misleading. It is not, as some might think impliedly suggested, a consent appearance or a special agreement of the type lawyers generally refer to as a stipulation in a case. The term stipulation to abide decree is the traditional name given to what others would call a surety bond. Its name derives from the undertaking spelled out in the bond "the parties hereto hereby consenting and agreeing, that in case of default or contumacy on the part of said claimant or its surety, execution may issue against their goods, etc." 2 Benedict, Admiralty, §§ 363, 368 (6th ed. 1940). Some of the various forms of the districts are set forth at 595–600. The General Admiralty Rules mention stipulations in Rules 4, 5, 11, 12, 24 and 51, 28 U.S.C.A. Gilmore & Black, Admiralty 650 (1957).

**5.** The Blaski litigation is still on its odyssey. A patent suit was filed in the Northern District of Texas and defendant, a resident of Texas, moved for transfer to the Northern District of Illinois where the validity of the same patent was involved in extended pending lit-

■ Even to the most ardent admiralty purist, the result presents no real or conceptual difficulties. The Court does not undertake to transfer the *res,* nor does it even attempt to transfer the cause while the *res* is still in custody of the Court. Before the transfer can be made, a Claim must have been filed and the vessel released under bond (stipulation). Once that is done, the lien on the vessel is discharged for all purposes, ceases to exist, and the release of libel bond is the sole security.[6] Traditional notions are not affected if that security floats with the cause wherever the law navigates it.

Nor does this alter in any way the characteristics of the libel *in rem,* or the historical, actual, or supposed nature of the liability of the ship as the thing. See Gilmore & Black, Admiralty 483–510 (1957). The libel begins as one *in rem.* It retains that status until the final decree, regardless of the place it pends. If as a libel *in rem* it has advantages or disadvantages, procedural or substantive, they follow the proceeding regardless of geography. And, of course, in ordering a transfer upon the application and consent of the Claimant, the "conferring" of jurisdiction upon the transferee court over a cause which would never have come its way had it been essential that the vessel be within its territory is no different than the time-honored practice in the initial filing of libels *in rem.* The subject matter being within the Court's jurisdiction, the parties and the cause being real and justiciable, a party or thing may submit to a particular court. And whether thought of in terms of waiver or consent, it is, as every proctor knows, done on a very large scale. 2 Benedict, Admiralty 78 (6th ed. 1940); The Providence, D.C.D.R.I.1923, 293 F. 595; The New England, see note 6, *supra;* and The Yozgat (P. Diacon-Zadeh v. Devlet Denizyollari), D.C.E.D.Pa. 1954, 127 F.Supp. 446, 1954 A.M.C. 2146.

We are not dealing with a coercive transfer, neither sought nor consented to by the Claimant. Broussard v. The Jersbek, D.C.S.D.N.Y.1956, 140 F.Supp. 851, 1956 A.M.C. 1575. We deal here only with a voluntary request seeking and consenting to the transfer. We join others in recognizing that this may be done. Torres v. Walsh, 2 Cir., 1955, 221 F.2d 319, 1955 A.M.C. 1181, certiorari denied 350 U.S. 836, 76 S.Ct. 72, 100 L. Ed. 746; Andino v. The S.S. Claiborne, D.C.S.D.N.Y.1957, 148 F.Supp. 701, 1957 A.M.C. 526; May v. The Steel Navigator, D.C.S.D.N.Y.1957, 152 F.Supp. 254, 1957 A.M.C. 1832.

As we find the transfer within the power of the District Court, we need only state as to the propriety of the exercise of that power that we find no basis for concluding that the Judge abused his discretion. The rule announced in Ex parte Charles Pfizer & Co., 5 Cir., 1955, 225 F.2d 720, is applicable and controlling.

Affirmed.

igation. We denied leave to file mandamus to prevent the transfer. Ex parte Blaski, 5 Cir., 1957, 245 F.2d 737. When it got to Chicago, the District Judge accepted it, although reluctantly. The Court of Appeals for the Seventh Circuit, after first approving the transfer, later changed its views and granted mandamus to prevent the Judge accepting the transfer ordered out of this Circuit. Blaski v. Hoffman, 7 Cir., 1958, 260 F.2d 317. Like the man without a country, this litigation has been expatriated from Texas; it has been denied admission to Illinois. To solve this impasse was presumably what led the Court to grant certiorari 359 U.S. 904, 79 S.Ct. 583, 3 L. Ed.2d 570. That decision could, of course, undo our action.

6. See Judge Woolsey's full discussion of this in The New England (J. K. Welding Co. v. Gotham Marine Corp.), D.C.S.D. N.Y., 1931, 47 F.2d 332, 1931 A.M.C. 407: "The stipulation for value is a complete substitute for the res, and the stipulation for value alone is sufficient to give jurisdiction to a court because its legal effect is the same as the presence of the res in the court's custody * * *." 47 F.2d at page 335. See also Gilmore & Black, Admiralty 650–51 (1957).