**FORSYTH INTERNATIONAL (U.K.)
LIMITED and Forsyth
International (B.V.), Plaintiffs,**

v.

**SS PENAVEL, her engines, boilers,
etc., Defendant.**

**No. CV485–002.**

United States District Court,
S.D. Georgia,
Savannah Division.

Oct. 22, 1985.

Fred S. Clark, Lee & Clark, P.C., Savannah, Ga., for plaintiffs.

David S. Sipple, Savannah, Ga., for defendant.

ORDER

EDENFIELD, District Judge.

Before the Court is Intervenor/Claimant's motion to decline jurisdiction.

I. *Background*

This is an action *in rem* against the Motor Vessel PENAVEL for breach of a contract to supply bunkers. Plaintiffs are an English bunker supplier and its Dutch parent company. The contract for bunkers was negotiated and entered into in London

by plaintiffs and a London bunker broker acting for the time charterer of the vessel, Arvo Shipping, Ltd., a Liberian corporation having its principal place of business in Monrovia, Liberia. The ordered bunkers were delivered and supplied to the defendant vessel in Singapore and Antwerp, Belgium in 1983. The owner of the vessel and claimant/intervenor here, Societe Francaise De Transports ("Societe"), was not a party to the contract.

The defendant vessel arrived in the port of Savannah in January of 1985. Plaintiffs then instituted this action, having said vessel arrested for a breach of a maritime contract and asserting a maritime lien on the vessel. Claimant/intervenor, Societe, seeks to have this Court decline jurisdiction.

The present action follows one brought in April, 1984 in France in which these plaintiffs seized the PANAVEL on the same claim as is asserted in this suit. That action was dismissed by the French court on the basis that under French law, plaintiffs had no claim against the vessel for bunkers sold to the time charterer. Plaintiffs have brought this instant action to take advantage of United States law that provides a supplier of necessaries to a ship a maritime lien which can be asserted in an *in rem* action against the vessel itself even if it was the time charterer rather than the owner who had ordered the supplies giving rise to the lien. 46 U.S.C. § 971.

It should be noted that plaintiffs have instituted an action in a London court against the time charterer on the same claim as is asserted in the present suit.

## II. *Law and Analysis*

Societe seeks to have the Court dismiss the action on the grounds of *forum non conveniens.* This doctrine "authorizes a trial court to decline to exercise its jurisdiction, even though the court has venue, where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum." *Sibaja v. Dow Chemical Co.,* 757 F.2d 1215, 1218 (11th Cir.1985).

"Before dismissing a case for *forum non conveniens,* a district court should ascertain whether American or foreign law is applicable." *Gahr Developments, Inc. v. Nedlloyd Lijnen, B.V.,* 723 F.2d 1190, 1192 (5th Cir.1984). If the court finds American law applies, the court should entertain the suit. *Id.* If, however, foreign law applies, the court must then consider several factors in deciding whether it should exercise its discretion and decline to assert jurisdiction. *Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *see also Chiazor v. Transworld Drilling Co.,* 648 F.2d 1015, 1017–18 (5th Cir.1983).

After considering the choice of law factors [1] listed in *Gulf Trading & Transportation Co. v. Vessel HOEGH SHIELD,* 658 F.2d 363, 366 (5th Cir.1981), *cert. denied,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982), the Court determines that foreign law would apply to this controversy. It is significant to note that London was the place of contracting for the bunkers, the place of contract negotiation, and the place of incorporation of one of the plaintiffs.[2] The contract was performed in Singapore and Antwerp, while the subject matter of the contract, bunkers, was consumed on the high seas. The facts involved do not warrant application of American law. Seizure of the ship in the United States does not by itself require application of American law. *See Ocean Ship Supply, Ltd. v. M/V LEAH,* 729 F.2d

---

**1.** The factors include:
(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance of the contract; (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. The Fifth Circuit adapted these factors from *Lauritzen v. Carson,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).

**2.** The parent company of the English plaintiff is in the Netherlands, while Paris is the place of incorporation of the claimant/intervenor, Societe.

971, 974 (4th Cir.1984); *Gahr Development v. Nedlloyd Lijnen, B.V.*, 542 F.Supp. 1224 (E.D.La.1982), *aff'd.*, 723 F.2d 1190 (5th Cir.1984). The country with the most points of contact with this dispute is England, and the Court finds that English law would control.[3]

■ After determining that foreign law applies to this action, the Court also holds that this action should be dismissed for *forum non conveniens*. Weighing the factors outlined in *Gilbert,*[4] *supra,* indicates that the balance is in favor of defendant and Societe. "Furthermore, although there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, the presumption applies with less force when, as in this case, the plaintiffs are foreign." *Gahr Development,* 542 F.Supp. at 1228 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

There is no United States interest involved in this lawsuit. No party is a United States citizen nor did any of the events of this suit (except the fortuitous seizure of the PANAVEL) occur in the United States. The PANAVEL rarely calls on United States' ports. The vessel was chartered by its French owner to a Liberian corporation which bought bunkers in Singapore and Antwerp from a British and Dutch supplier through a British bunker broker. The witnesses, documents, *etc.*, are all in Europe. Dismissing the action here will allow the suit to be refiled in a more convenient forum.

In addition to the "private interests" which favor dismissal of this suit, some deference must also be given the "public interests." The events leading to this dispute occurred mostly in England. England has an interest in having the controversy decided there. "The plaintiffs fail to demonstrate any factor that would justify the considerable commitment of judicial time and resources that would be inevitably be required if this case were tried in the United States." *Gahr Development,* 542 F.Supp. at 1228–29.

■ It is imperative that before a court dismisses an action for *forum non conveniens,* there must be an available alternative forum for the continuation of the suit in which the plaintiff may pursue an adequate remedy. *Piper Aircraft,* 454 U.S. at 255 n. 22. These prerequisites are satisfied here. Societe has agreed to submit to the jurisdiction of the English court, waive any applicable statute of limitation or laches periods except those which can be raised in the present action, and post security in an amount equal to the security now in place in the United States. Affidavit of Jean-Yves Thomas, attached as Exhibit B to Claimant's Motion to Decline Jurisdiction. Conditional dismissals of the type contemplated here have been utilized before in *forum non conveniens* cases. *See Perusahaan Unum Listrik Negara v. M/V TEL AVIV,* 711 F.2d 1231 (5th Cir. 1983); *Veba-Chemie A.G. v. M/V GETAFIX,* 711 F.2d 1243 (5th Cir.1983). Plaintiffs may pursue Societe *in personam* in the English court.[5] This suit could possi-

3. The Court also expressly declines to apply the doctrine of renvoi to this case. Renvoi has not gained acceptance in maritime lien cases. *See Forsyth International U.K., Ltd. v. M/V RUTH VENTURE,* 633 F.Supp. 74 (D.Or.1985).

4. These factors include the "private interests" of the litigants: (1) relative ease of access to sources of proof; (2) availability of compulsory process; (3) cost of obtaining attendance of willing witnesses; and (4) the possibility of view of the premises.

The "public interest" is also implicated: (1) congestion of the court docket; (2) burden of jury duty upon people of a community having no relation to the litigation; and (3) the local interest of having local controversies decided at home.

5. Thus, the plaintiffs have an available alternative forum. As for the adequacy requirement, the Court recognizes that English law provides no remedy *in rem* against the vessel when plaintiffs' dealings were with the time charterer. The fact that the substantive law applicable in the alternative forum is less favorable to plaintiffs' chance of recovery is not conclusive in a *forum non conveniens* inquiry. *Piper Aircraft,* 454 U.S. at 247, 102 S.Ct. at 261. Although dismissal of this *in rem* action will result in the loss of the vessel as security, this concern is mitigated by Societe's agreement to post equivalent security in the alternative forum. By re-

bly be joined with the one plaintiffs have already instituted against the time charterers so that the entire dispute could be settled in one action.

### III. *Conclusion*

This action is DISMISSED under the doctrine of *forum non conveniens* on the condition that Societe submit itself to the jurisdiction of the English courts as outlined above. The dismissal is without prejudice, and the plaintiff may reinstitute the proceeding upon Societe's default. The Clerk is directed to retain the posted security until the Court is notified that Societe has satisfied the conditions incident to this dismissal.

quiring Societe to submit to English jurisdiction and post equivalent security in the alternative forum, "the conditional dismissal satisfies both the concerns of availability and adequacy." *Perusahaan*, 711 F.2d at 1239.