**PEREZ Y. COMPANIA (CATALUNA), S.A., Plaintiff,**

v.

**TRITON PACIFIC MARITIME CORP., Defendant.**

**Civ. A. No. H–84–2198.**

United States District Court, S.D. Texas, Houston Division.

Aug. 29, 1986.

Robert J. Ryniker, Houston, Tex., for plaintiff.

Gus A. Schill, Jr., Houston, Tex., for defendant.

### ORDER

McDONALD, District Judge.

Pending before the Court is the Motion of Triton Pacific Maritime Corporation to Cancel Security and Dismiss Plaintiff's *In Personam* Claim Pursuant to the Doctrine of Forum Non Conveniens, of Defendant Triton Pacific Maritime Corporation (hereafter "Triton"). Having considered the arguments of the parties and the applicable law, the Court is of the opinion that the Motion should be DENIED in part and GRANTED in part.

### I. Background

This action began as an *in rem* claim under Rule 9(h) of the Federal Rules of Civil Procedure against the motor vessel MEXICO I for breach of a contract furnishing bunker fuel oil to the vessel. Plaintiff

is a shipping agent, a Spanish corporation, appointed by the vessel's charterer, Pacific Caribbean Shipping (USA) Inc., a United States corporation. (hereafter "Pacific Caribbean") The vessel is registered in the Philippines; Triton is a Philippine Corporation. On or about April 17, 1984, while the vessel was at Pasajes, Spain, Plaintiff, at the request of Pacific Caribbean, requested Entrepol, a Spanish company, to supply the bunker fuel at issue to the vessel. The vessel accepted such fuel, Plaintiff in turn receiving a "Bunker Receipt" signed by the master of the vessel. Plaintiff paid Entrepol for the fuel, but has never been reimbursed for the funds which it paid Entrepol.

The parties have stipulated that Spanish law controls the action. On the basis of its interpretation of that law, the Court by Order of October 30, 1985 determined that no *in rem* action existed under Spanish law, but granted Plaintiff leave to amend its Complaint to assert an *in personam* action against the owner, Triton.

## II. Analysis

### A.) *The Security*

Defendant Triton seeks first to cancel the letter of undertaking filed in this case. Defendant contends that since the Court has found that no valid *in rem* cause of action exists under Spanish law, the security should be cancelled because it was, by the language of the letter, limited to the previous proceeding *in rem* only, and does not provide Plaintiff with security for the *in personam* action. The vessel has never been arrested.

A letter of undertaking, as opposed to a bond or stipulation providing for the release of the vessel after its arrest, represents an agreement to not arrest the vessel under process in return for a promise by the ship owner, his insurer, or his bank, that security will be posted (or judgment paid) up to a specified amount if and when the case is actually tried. G. Gilmore & C. Black, Jr., *The Law of Admiralty*, 800 (2d Ed.1957) However, their legal effect is

essentially the same. *See Continental Grain Company v. Federal Barge Lines, Inc.*, 268 F.2d 240, 243 (5th Cir.1959), *aff'd*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

■ With respect to the release of a ship under a special bond, or stipulation, or, by extension, the filing of a letter of undertaking, the effect is to transfer the lien from the ship to the fund represented by the letter. The letter becomes a complete substitute for the *res. J.K. Welding Co. v. Gotham Marine Corporation*, 47 F.2d 332, 335 (S.D.N.Y.1930).

■ The letter is, in essence, a contract. Like any other contract, it is based on consideration, in this situation the promise of the claimant not to arrest or seize a vessel against which a claim is pending. *Id.* In exchange, it gives to the Claimant "a new security of unfluctuating value in the place of the vessel," up to the amount pledged in the letter. *Ibid.*

Since the letter of undertaking is a contract, and takes the place of the *res*, it can secure more than the value of the *res*, or represent whatever other promises the parties wish to secure. The Court will, therefore, examine the letter of undertaking in light of traditional principles of contract interpretation, and pursuant to Spanish law as it has been presented to the Court.

Under Spanish law, although, as the Court has determined, no right to proceed against the vessel directly *in rem* exists, a vessel may be seized or attached as security for a personal claim against its owner. Affidavit of Fernando Meana Green. The Court construes the language of the letter of undertaking as being broad enough to secure such a claim.

Specifically, the letter provides that: [1]

In consideration of your refraining from seizing and agreeing *not to seize, arrest or attach the M/V "MEXICO I" or any other property belonging to its owner or in the same beneficial ownership or management* by reason of the claim ...

---

**1.** See Exhibit B to Triton's Motion.

against the vessel ... the [underwriting] Association ... agrees [to pay up to $25,000 in the event a final decree is entered in favor of Plaintiff against the vessel *in rem;* or to file a bond to secure the amount of $25,000] ... (emphasis added)

Construing the letter in light of the instrument as a whole, and considering the tenor of the whole agreement and the surrounding circumstances,[2] the Court finds that it represents an agreement by which the underwriter's intent, on behalf of the owner, Triton, is to promise to pay Plaintiff up to $25,000 in the event of a finding of liability against the Defendant in exchange for Plaintiff's promise not to attach the vessel or any other property belonging to Defendant to secure that claim.[3] Since Defendant's vessel is, in fact, still potentially subject to attachment under Spanish law, a potential lien still exists on the vessel. *See The Resolute,* 168 U.S. 437, 18 S.Ct. 112, 42 L.Ed. 533 (1897). The Court thus construes the letter as providing security for that eventuality. Therefore, the letter of undertaking will not be cancelled, and will be transferred with the case at bar, pursuant to the Court's decision on the *forum non conveniens* issue, as discussed below. *See Continental Grain,* 268 F.2d at 243–44.

### B.) *Forum Non Conveniens*

■ Defendant Triton next seeks to dismiss the case at bar pursuant to the doctrine of *forum non conveniens.* Since the parties have already stipulated that Spanish law controls the matter, the Court moves directly to a consideration of factors pertinent to a *forum non conveniens* analysis. *Gahr Developments, Inc. of Panama v. Nedlloyd Lijnen, B.V.,* 723 F.2d 1190 (5th Cir.1984). These factors include the private interests of the parties, which refers to such matters as: the relative ease of access to sources of proof, availability of compulsory process, the cost of obtaining attendance of willing witnesses, and practical considerations concerning

the administration of trial. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The analysis must also consider public interest concerns, referring to such matters as "congestion in the courts, the burden of jury duty upon the people of a community having no relation to the litigation, and the local interest in having local controversies decided at home." *Gahr,* 723 F.2d at 1192 (citing *Gulf Oil,* 330 U.S. at 508–9, 67 S.Ct. at 843).

■ Although a strong presumption exists in favor of the Plaintiff's choice of forum, the presumption applies with less force when the Plaintiff is foreign. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); *Gahr,* 723 F.2d at 1192. Nonetheless, in order to overcome the presumption, the balance of the above factors must also favor the Defendant. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843.

■ The Court finds that the balance of all factors favors the Defendant, Triton, and warrants dismissal of the case. To begin with, all parties to the lawsuit are foreign, with the exception of Pacific Caribbean, the charterer, which is neither a plaintiff nor a defendant in the action. None of the events giving rise to the lawsuit occurred in the United States; the sole connection to the United States being the fact that the vessel, on an unspecified number of occasions, carries goods to and from the Port of Houston, and the Complaint was filed upon its arrival at that Port. Otherwise, the contract at issue was negotiated and executed in Spain, and the goods were loaded on the ship there.

Furthermore, as is apparent from conflicting affidavits filed by the parties, to retain the case would embroil the Court in "untang(ling) problems in law foreign to itself." *Gulf Oil,* 330 U.S. at 509, 67 S.Ct. at 843. The doctrine of *forum non conveniens* was designed in part "to help courts avoid conducting complex exercises in com-

---

**2.** *See Vreeland v. Federal Power Commission,* 528 F.2d 1343 (5th Cir.1976); *Richland Plantation Co. v. Justiss-Mears Oil Co., Inc.,* 671 F.2d 154 (5th Cir.1982).

**3.** *Cf.* The language of Rule B under admiralty law.

parative law." *Piper Aircraft,* 454 U.S. at 251, 102 S.Ct. at 263. Regardless of which view of Spanish law as to *in personam* claims prevails, the Court finds that fact issues still must be determined under either version, and that all relevant witnesses and evidence are in Spain or Europe,[4] and beyond the Court's powers of compulsory process. Although Plaintiff asserts that testimony could be obtained by letters rogatory or other similar devices, to "fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition is to create a condition not satisfactory to Court, jury or most litigants." *Gulf Oil,* 330 U.S. at 511, 67 S.Ct. at 844. Finally, there is a potential problem as to enforceability of any final judgment.

In addition to the above "private interest" factors favoring dismissal, "public interest" factors weigh in Triton's favor, also. The events leading to the controversy occurred in Spain, so Spain has an interest in having the controversy decided there. *See Forsyth International (U.K.) Limited v. S.S. Penavel,* 630 F.Supp. 61, 63 (S.D.Ga. 1985). A jury in Houston should not be subjected to serving jury duty in connection with a matter of no local interest. Further, Courts in Houston are severely congested, which indicates that a matter of no local concern should not be tried here; to do so may delay the coming to trial of cases of local concern.

Plaintiff makes no real showing that the present forum serves any convenience of its own, merely arguing that the case should not be transferred because of the extent of prior activity in the case, and controverting Triton's arguments and claims as to inconvenience. Although the Court does not condone Triton having waited so long to bring the above Motion, on balance the factors strongly favor Triton's position. There is available an alternative forum for the continuation of the suit, in which the Plaintiff may pursue an adequate remedy. *Piper,* 454 U.S. at 255 n. 22, 102 S.Ct. at 265 n. 22. Triton has agreed to submit to the jurisdiction of the

Spanish courts, and to waive any applicable statute of limitations (or, presumably, laches) defenses. The Court has ruled that the security for the claim is to be transferred with the case. Plaintiff has not indicated that it cannot pursue the lawsuit in Spain, or that no adequate remedy exists there. On strikingly similar facts, the United States District Court in Georgia transferred a case to England pursuant to the doctrine of *forum non conveniens. See Forsyth,* 630 F.Supp. at 63–4. It is accordingly,

ORDERED, ADJUDGED and DECREED that the Motion be and hereby is DENIED insofar as it seeks to cancel the letter of undertaking, but GRANTED insofar as it seeks to dismiss the case pursuant to the doctrine of *forum non conveniens.* The action is hereby DISMISSED under the doctrine of *forum non conveniens,* on the condition that Triton submit itself to the jurisdiction of the Spanish courts as outlined above. The letter of undertaking is to be retained as security for the case filed with the Spanish courts. The dismissal is without prejudice; Plaintiff may reinstitute the proceeding upon Triton's default as to the above conditions.

---

**4.** According to Triton, the vessel's managing agents are in Europe.