**PANACONTI SHIPPING CO., S.A.,**
Plaintiff–Appellant,

v.

**M/V YPAPANTI, her engine, tackle, and apparel, etc., in rem, et al.,**
Defendants–Appellees.

No. 88–3165.

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1989.

---

Burke & Mayer, James O.M. Womack, New Orleans, La., for plaintiff-appellant.

Phelps, Dunbar, Marks, et al, Christopher O. Davis, New Orleans, La., for defendants-appellees.

Before JOHNSON, JOLLY and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The holder of a ship mortgage, who sued to foreclose on the mortgage, appeals the district court's dismissal of the complaint for lack of *in rem* jurisdiction over the vessel and for *forum non conveniens* with respect to the *in personam* claim against the shipowner. Finding that a stipulation executed by the parties at the outset of the litigation adequately supports the court's jurisdiction over the vessel and the parties, we reverse and remand.

## I

On July 11, 1986, Panaconti Shipping Company sold to Unity Shipping Company the vessel now named M/V YPAPANTI for $960,000. Pursuant to a Memorandum of Agreement ("MOA"), Unity paid $500,000 in cash and was to pay the remaining $460,000 over thirty months. This debt was secured by a promissory note and a First Preferred Ship Mortgage in favor of Panaconti. Unity was to pay $17,180.15 monthly, commencing August 12, 1986. The MOA also imposed obligations on Panaconti such as payments of crew wages through the date of delivery, payment of repatriation expenses if the crew members did not complete their employment contracts, and other items. The MOA, bill of sale, note, and mortgage were all prepared and executed in Panama.

On November 19, 1986, Panaconti instituted proceedings in federal district court in Louisiana to foreclose on its mortgage lien by filing a complaint *in rem* against the M/V YPAPANTI and *in personam* against Unity. Panaconti alleged that Unity had not made the second, third, or fourth installments under the terms of the

financing agreement and that as a result Panaconti had accelerated the note and could recover the whole amount. Panaconti also filed a motion for a warrant to arrest the M/V YPAPANTI, which was in New Orleans at that time. In response, Unity sought a pre-seizure hearing in the district court and claimed that, under the MOA, Panaconti actually owed money to Unity. The district court then encouraged the parties to negotiate an amicable resolution to their dispute.

The parties executed a stipulation on November 21, 1986, which was subsequently approved and entered by an order of the district court. The stipulation recites as parties plaintiff, Panaconti, and "defendant, Unity ..., claimant of the M/V Ypapanti...." The stipulation also recites that Panaconti had filed a complaint seeking to foreclose on the mortgage and had requested a warrant to arrest the vessel, and that Unity denied breaching the mortgage or owing money to Panaconti, but rather claimed that Panaconti owed Unity money. Then, "in order to avoid the arrest of the vessel, to eliminate the costs of security and counter-security, to resolve certain differences, and in the furtherance of justice," Panaconti and Unity agreed on the following: (paragraph 1) Panaconti would not arrest the vessel in New Orleans or anywhere else during the pendency of the litigation; (2) neither party would post security; (3, 4, and 5) Unity would pay Panaconti $245,275.51, under protest and without prejudice, as prepayment of principal; Unity would also pay interest monthly on the new principal balance, and would resume paying monthly installments on the new principal balance itself on June 12, 1987; furthermore, the same interest rate would apply to any amount which Panaconti might owe Unity under the MOA; (6) Unity would provide proof of insurance on the vessel, with Panaconti named as an additional loss payee; and (7) Panaconti and Unity would attempt to resolve their differences, failing which they would proceed to litigate all differences between themselves in that district to the exclusion of all other jurisdictions. The stipulation is signed by attorneys for Panaconti and by "Attorneys for Unity Overseas, S.A. and the M/V Ypapanti."

Unity later filed a counterclaim against Panaconti in the amount of $300,000. In addition, Unity filed a motion to substitute cash bond in lieu of res, seeking to post security equal to the value of the outstanding value of the mortgage on the vessel or, in the alternative, to pay off the mortgage and force Panaconti to post counter-security equal to 150% of Unity's counter-claim. Unity represented in that motion that it was contemplating sale of the vessel, which could not be done without Panaconti's consent under the terms of the mortgage. Panaconti opposed the motion, arguing that no *res* was before the court. The district court denied the motion on the grounds, that, by virtue of the stipulation, no *res* was before the court.

During a pretrial conference on December 2, 1987, the district court *sua sponte* raised the issues of lack of *in rem* jurisdiction and *forum non conveniens* as to the action *in personam*. Following the appropriate motions and briefing, the district court dismissed the action concluding that no *in rem* jurisdiction existed since Panaconti had not arrested the vessel and Unity had not filed a claim of owner, and that the appropriate forum for the dispute between Panaconti and Unity was Panama. On appeal, Panaconti challenges both grounds for dismissing its complaint.

## II

The district court's conclusion that it lacked *in rem* jurisdiction was erroneous. The district court interpreted the stipulation as a dismissal of the action *in rem,* noting the lack of the recognized indicia of substituted *res.* We cannot uphold this interpretation. Rather, we hold that the stipulation adequately serves the purpose of a letter of undertaking, which is sufficient to perfect *in rem* jurisdiction in the absence of an arrest of the vessel. *See Continental Grain Co. v. Federal Barge Lines, Inc.,* 268 F.2d 240 (5th Cir.1959). A traditional letter of undertaking provides that, in consideration of the vessel not being seized and released on bond, the vessel

owner will file a claim to the vessel and pay any judgment rendered against the vessel even if the vessel itself is subsequently lost. *See Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1107 (5th Cir.1985).

The stipulation here satisfies these salient characteristics of a traditional letter of undertaking. First, the stipulation expressly states that one of its purposes is to avoid the arrest of the vessel. The stipulation does not state, however, that Panaconti would abandon its action *in rem*. To the contrary, the stipulation expressed Panaconti's intention to foreclose on the ship mortgage, an action for which jurisdiction over the collateral itself, i.e., the M/V YPAPANTI, is obviously necessary; Panaconti was not simply suing on the note. Taken together, these features of the stipulation indicate that its purpose was to allow the action *in rem* to proceed without physical seizure of the vessel. Thus, the stipulation waived *attachment* of the vessel rather than the *action* against the vessel.

Second, like a letter of undertaking, the stipulation implicitly provided for security for the parties' claims. Generally, an arrested ship may be released upon posting of a bond in an amount specified by statute or by a stipulation for value. *See* G. Gilmore and C. Black, *The Law of Admiralty* § 9–89 (2d ed. 1975). Letters of undertaking may similarly secure a claim even without the formal arrest of the vessel. *Id.; see also Continental Grain*, 268 F.2d at 242–43. The present stipulation satisfied the need for security by giving Panaconti partial payment of the contested mortgage. Furthermore, as represented by Unity's counsel at oral argument, Unity left enough value in the mortgage to secure its counterclaim against Panaconti. In addition, the stipulation provided that Panaconti would be named as an additional loss payee on the vessel's insurance; as in a letter of undertaking, the stipulation thus insured Panaconti against the loss of its collateral in exchange for Panaconti's waiver of physical control over the vessel that it could have obtained through an arrest. The stipulation therefore satisfied the need for security in lieu of possession of the actual vessel, while also serving its express goal of eliminating the incidental costs of actually posting security and counter-security.

Third, in the stipulation the owner of the vessel agreed to litigate the dispute in that forum. While there is no express agreement in the stipulation to file a formal claim of owner, Unity did execute the document in the role of "claimant" as well as defendant. Thus, Unity agreed in the stipulation, as claimant of a vessel in an action to foreclose on a ship mortgage, i.e., an action necessarily *in rem* as well as *in personam*, to litigate the dispute in that forum despite an agreement by the plaintiff not to arrest the vessel. Unity therefore provided all the guarantees to appear that are present in a traditional letter of undertaking.

For the foregoing reasons, we conclude that the stipulation can only be interpreted, consistently with its language as well as maritime practice and case law, as a waiver of the requirement of attachment of the vessel sufficient to preserve *in rem* jurisdiction of the federal court.

## III

■ We turn next to the district court's dismissal of the action *in personam* on *forum non conveniens* grounds. The district court found that an adequate foreign forum existed, that private interests were inconclusive, and that the public interests weighed in favor of dismissal on the condition that Unity submit to Panamanian jurisdiction. *See In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982*, 821 F.2d 1147 (5th Cir.1987). The district court did not, however, account for the express agreement of the parties in the stipulation to litigate their dispute in the Eastern District of Louisiana, an agreement upon which the district court had expressly placed its imprimatur. It is true, as the defendant argues, that

> even when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon a finding that

retention of jurisdiction would be unduly burdensome to the community, that there is no public interest in the dispute or that foreign law will predominate if jurisdiction is retained.

*Air Crash,* 821 F.2d at 1165–66 (quoting *Pain v. United Technologies Corp.,* 637 F.2d 775, 792 (D.C.Cir.1980)). The private conveniences are not balanced, however, when the defendant has explicitly agreed to litigate in the forum originally chosen by the plaintiff; rather, Unity waived any inconvenience. By failing to give effect to the court-approved stipulation, the district court clearly abused its discretion.

### IV

The stipulation in this case acknowledged and adequately supported the jurisdiction of the federal court over the parties and the vessel involved in this dispute. Accordingly, the district court erred in dismissing for lack of *in rem* jurisdiction, and abused its discretion in dismissing the remainder of the complaint for *forum non conveniens.* We therefore remand for further proceedings consistent with this holding.

REVERSED AND REMANDED.