Louis **NUTA, Jr., d/b/a Nuta's Boat Yard, Plaintiffs,**

v.

**M/V "FOUNTAS FOUR," (sic) her engines, equipment, and appurtenances, in rem, and Samuel J. Fountas, in personam, Defendants.**

**No. 88–794–CIV–NCR.**

United States District Court, S.D. Florida.

March 30, 1990.

John H. Thomas, Miami, Fla., for plaintiffs.

Patricia Moeller, Legal & Consulting Services, Inc., Miami, Fla., for defendants.

### MODIFIED FINAL JUDGMENT

ROETTGER, District Judge.

This admiralty case was transferred from Judge Hastings' docket to that of the undersigned judge after a resolution of impeachment was passed by the House of Representatives against Judge Hastings.

The case presents this unusual factual background and procedure: final judgment was entered by Judge Hastings, but the vessel was never arrested by the Marshal and the Marshal refuses to sell the vessel. Plaintiff seeks to hold the U.S. Marshal of this District in contempt and Defendant seeks to set aside the final judgment, alleging failure of service.

### STATEMENT OF THE CASE

On May 5, 1988, the Complaint was filed against Defendant's vessel, which had been at Plaintiff's yard for some time with an *ad damnum* claim of approximately $7,868.93. The M/V FOUNTAS FOUR, a 41' sailing vessel, had been docked there after it had been hauled by Plaintiff yard.

Plaintiff filed a Stipulation of Costs for $500.00. Plaintiff attempted to avoid the $2,000.00 advance for costs required by the Marshal in this District to arrest the vessel.

Inasmuch as the boat had been in Plaintiff's yard for some time and was still

there, the court appointed Plaintiff as substitute custodian.

Plaintiff then petitioned the court to find that the court had jurisdiction of the vessel *in rem* asserting both that Plaintiff had consented to that and Defendant had abandoned the vessel. Judge Hastings ordered that the arrest be effected by "plastering" a copy of the court's order in the vessel's bridge and by Plaintiff's mailing a copy of the order to the last known address of Defendant owner.

Perhaps not surprisingly, Defendant contends at this time both that the address was not his residence and he did not receive notice.

In April of 1989, upon Plaintiff's renewed Motion for Final Judgment and Sale, Judge Hastings entered an order granting Plaintiff a Final Judgment against the vessel *in rem* and the owner *in personam* and ordered the Marshal to sell the vessel according to the rules of this court. Publication was made in a local legal paper pursuant to Judge Hastings' judgment.

The Marshal of this District refused to hold the sale because the vessel had never been arrested by the Marshal and Plaintiff filed a motion for a Rule to Show Cause why the Marshal should not be held in contempt.

Defendant, on August 11, 1989, filed a motion to set aside the judgment pursuant to Rule 60(b); by then the case had been assigned to the undersigned judge when all of Judge Hastings' inventory of cases were distributed to the other judges of this District following the resolution of Impeachment against Judge Hastings.

As with many matters that stray from the beaten path of usual practice and procedure, this case presents questions of unexpected complexity.

The court is confronted with three questions: 1) what, if anything, is wrong with the procedure used by Plaintiff in this case?; 2) should Supplemental Rule C be read and applied literally?; and 3) is the sale of a vessel merely a ministerial duty imposed on the United States Marshal Service, to act without discretion? Each of these questions is not separate and distinct, but flow from one another.

Addressing the questions in reverse order, the court finds that the United States Marshal Service is charged with the responsibility of executing "all lawful writs, process and orders issued under the authority of the United States." 28 U.S.C. § 566(c). The United States Marshal Service can successfully refuse to sell the vessel at issue if there was never a lawful arrest of the vessel in this case. However, the question remains as to whether Judge Hastings' order dated July 22, 1988 would satisfy the "lawful" requirement. The court is aware that it has been held, in dictum, that the United States Marshal Service "are considered as mere ministerial officers to execute process when put into their hands, and [are] not made the judges whether such process shall be issued." *The Levy Court of Washington County v. Ringgold*, 30 U.S. (5 Pet.) 451, 8 L.Ed. 188 (1831). Unlike the purely functionary issue in the *Levy* court case, the situation *sub judice* involves an Order that attempts, albeit undoubtedly unintentionally, to use a shortcut around a body of established procedural rules for the conduct of judicial matters in federal court. So, while it is accurate to say that the duty of the United States Marshal is *per se* ministerial, relying exclusively on this principle would ignore the practical aspects of this problem.

The M/V FOUNTAS FOUR was outside the domain of the United States Marshal Service, as alien as any of the many thousands of vessels in the Southern District of Florida that have not been arrested and held by the United States Marshal Service. The Marshal was never the custodian of the vessel; nevertheless, Judge Hastings appointed Plaintiff as substitute custodian. As the vessel was never arrested by the United States Marshal, the M/V FOUNTAS FOUR was not "in the system", notwithstanding Judge Hastings' orders of July 22, 1988 and April 7, 1989. A vessel comes into "the system" when the requirements of Supplemental Rule C are complied with. There seems to be little doubt that the requirements of Supplemental Rule C are to be read literally. Plaintiff has not

directed the court to any case whereby a vessel was deemed to be validly within the court's *in rem* jurisdiction when Supplemental Rule C was not complied with, absent an agreement to the contrary between *both* parties to the cause. See *Panaconti Shipping Co., S.A. v. M/V Ypapanti*, 865 F.2d 705 (5th Cir.1989); *Continental Grain Co. v. Federal Barge Lines, Inc.*, 268 F.2d 240 (5th Cir.1959).

The purpose of Supplemental Rule C, as with all of the Federal Rules of Civil Procedure, is to secure the just and speedy resolution of legal causes. As such, notice and due process are paramount concerns, being fundamental to traditional notions of justice and fairness. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Justice is not obtainable in the absence of notice to the litigants. *Id.*, at 212, 97 S.Ct. at 2584. Notice is accomplished through compliance with Supplemental Rule C. The requirements of Supplemental Rule C cannot be casually disregarded without imperiling traditional notions of due process and fairness.

Although the maritime law is among the most traditional areas of the law, the Admiralty Court is not hide-bound to disavow that which is useful to secure a just and speedy resolution of a cause of action. *Florida Bahamas Lines v. Steel Barge "Star 800" of Nassau*, 433 F.2d 1243 (5th Cir.1970). This court does not reject the novel procedure used in this case merely because it is new, different or unfamiliar. Rather, the court rejects Plaintiff's attempt to circumvent the established Rules of Civil Procedure because to follow Plaintiff's lead would invite injustice to admiralty defendants.

Plaintiff asserts the procedure is spawned by economic considerations when the amount in controversy is relatively small. The Marshal requires a TWO THOUSAND & 00/100ths ($2,000.00) DOLLAR deposit before arresting a vessel. Of course, the amount expended is taxable as costs.

Plaintiff's procedure raises the prospect that the guarantees of notice and due process carefully drafted by the United States Supreme Court into the Supplemental Rules for certain admiralty and maritime claims could be finessed, to be replaced by an *ex parte* process canted heavily in the favor of the maritime lienholder. To be sure, the process followed by Plaintiff in the instant case was considered by a prior judge of this court, now removed.

The court finds that there is no reason to abandon that which works satisfactorily. To borrow a common rural phrase, "if it ain't broke, don't fix it." More precisely, the language of Supplemental Rule C states clearly:

"... the verified complaint and any supporting papers shall be reviewed by the court and, if the conditions for an action in rem appear to exist, an order so stating and authorizing a warrant for the arrest of the vessel or other property that is the subject of the action shall issue and be delivered to the clerk who shall prepare the warrant and deliver it to the Marshal for service ..."

One need only to look at this case to see what is wrong with the procedure advocated by Plaintiff. This cause would have been concluded long since had Plaintiff simply complied with the requirements of Supplemental Rule C. It can be safely said that in an attempt to save the expense of the $2,000.00 refundable deposit for Marshals' fees, the procedure pursued by Plaintiff has been "penny-wise, but pound-foolish."

Congress has empowered the Supreme Court of the United States of America to prescribe the rules of procedure utilized in the federal courts. 28 U.S.C. § 2072. To allow litigants to alter or disregard the prescribed procedure willy-nilly invites problems—like the instant case.

Arguably, the real problem with the procedure employed in this case is that not only was the *in rem* Defendant M/V FOUNTAS FOUR never properly served, but the *in personam* defendant, the vessel owner, contends he didn't get actual notice as the address used was not his residence. More importantly, the court file refutes the validity of any *in personam* service upon the alleged owner, Samuel J. Fountas. *Tucker v. Dianne Elec., Inc.*, 389 So.2d 683

(Fla.App., 5th Dist.1980), sets forth the method for *in personam* service method in Florida on a non-resident boat owner defendant, i.e. personal service on the non-resident under § 48.194 of Florida Statutes. To be sure, Judge Hastings' order of July 21, 1988 indicates at paragraph 3 that Plaintiff had attempted service by mail on Defendant FOUNTAS in Columbus, Ohio and that "Plaintiff is currently attempting personal service at the owner's last known home address." However, personal service on the non-resident under § 48.194 does not appear in the court file. Consequently, this court never had jurisdiction over either the *in rem* Defendant M/V FOUNTAS FOUR or the *in personam* defendant and the Final Default Judgment entered on April 7, 1989 is a nullity. Therefore, it is

ORDERED AND ADJUDGED that Defendant's Motion to Vacate the Final Default Judgment entered in this cause on April 7, 1989 is GRANTED, pursuant to Fed.R.Civ.P. 60(b).

FURTHER ORDERED AND ADJUDGED that Defendant's motion to dismiss this cause based on a failure to properly serve either the *in rem* or the *in personam* Defendant, SAMUEL J. FOUNTAS, pursuant to Fed.R.Civ.P. 12(b)(5) is GRANTED. This cause is hereby DISMISSED, without prejudice, to effect service within 20 days from date of this order as neither Defendant has been properly served. Likewise, Defendant, SAMUEL J. FOUNTAS is not deemed to have appeared solely by his filing pleadings contesting this Court's jurisdiction.

FURTHER ORDERED AND ADJUDGED that in accordance with the foregoing, Plaintiff's Motion to Hold the United States Marshal in Contempt is DENIED and Defendants' motion to stay is DENIED AS MOOT; and Defendants' alternative Motion to Dismiss for insufficient service of process is likewise DENIED AS MOOT.

DONE AND ORDERED this 30th day of March, 1990, and modified as to form only on December 28, 1990.